## Hilton Wilson and others v. Henry Wagar.

*Pleading: Assumpsit: General issue.* The general issue in assumpsit, as a general rule, denies and puts in issue every fact, and every combination of facts, essential to the plaintiff's cause of action as set up in the declaration.

*Evidence: Cross-examination.* It is competent on cross-examination to call out, not only any fact contradicting or qualifying any particular facts stated on the direct examination, but also any thing tending to rebut or modify any conclusion or inference resulting from the facts so stated.

　　In an action upon the common counts in assumpsit, for goods sold and delivered, it is competent to show, on cross-examination of a witness whose direct testimony tended to show a sale of the articles without any specified or agreed price, that they were furnished under and by virtue of a special contract.

*Testimony on cross-examination.* The testimony elicited on a legitimate cross-examination of a witness, constitutes a part of the evidence given in chief, and both are alike to be treated as evidence given on the part of the party calling the witness.

*Goods sold and delivered: Contract: Part performance: Damages.* In an action by the vendor upon a contract for the sale and delivery of goods, where only a portion of the goods have been delivered and part payment has been made, and the vendee has refused, on a tender thereof, to accept and receive the residue, if it appears that the undelivered portion exceeds in value the unpaid balance of the purchase price, only nominal damages can be recovered; as he would gain, instead of losing, by the vendee's breach.

WILSON *v.* WAGAR.

*Special contract: Damages.* Damages for being prevented from performing such a contract, could only be recovered under a special count upon the contract, and not under the common counts.

*Contract: Part performance: Quantum valebat: Recoupment.* The delivery of a portion only, of the goods agreed to be furnished by a contract entire in its nature, and providing one gross sum for the whole, if the vendee accepts and appropriates them so as to derive a benefit therefrom, entitles the vendor in a proper case to recover the reasonable worth of the goods delivered, not exceeding the contract price, subject however to the vendee's right to recoup his damages for the breach of the contract.

*Contract: Part performance: Part payment: Set-off: Quantum valebat.* This right of action, although it involves an abandonment of the attempt to perform the contract, does not proceed upon the idea of a repudiation or rescission of it; and the vendor is not bound before bringing the suit, to repay the money received by him on the contract; but this will be treated as so much money in his hands for the vendee's use, the benefit of which he will be entitled to as set-off.

*Right of action limited.* This right of action, however, being an innovation upon the common law, and being based upon the broad principles of equity, and recognized and admitted into the law only for the purpose of avoiding gross injustice, is confined to cases where the application of the strict principles of the old common law would savor of hardship and injustice; and should never be allowed to a plaintiff who has wantonly, or in bad faith, or as mere matter of speculation, refused to perform his contract.

*Consent: Waiver: Fault.* Consent on the part of the vendee in such contract to delay of the vendor in performing, and a waiver of damages on that ground, in the absence of any showing that he was in fault as to the vendor's final failure to perform, or prevented performance, or by his acts justified non-performance, is not sufficient to authorize a recovery for the portion of the articles delivered, at their full value and in excess of the contract price; such a case is not within the principle of *Kearney v. Doyle, 22 Mich., 294.*

*Offer: Refusal: Condition.* A refusal to accept an offer to deliver which is coupled with a condition, does not put the party refusing in default, if the condition be one that he is not bound to perform.

*Contract: Postponement: Payment: Security: Tender: Default.* Under the contract in this case, a postponement of the performance by the vendor, with the vendee's assent, operated, under the circumstances, to postpone, for a corresponding period, the payment provided for by the contract; and a tender by the vendee, of securities in accordance with the contract, except as to such postponement in time, was sufficient to put the vendor in default.

*Tender: Refusal: Objection: Time of payment: Presumption.* Where a security required by a contract, is tendered and refused, not upon the ground that it was not made payable at the proper time but upon another ground, it will be presumed, in the absence of any showing to the contrary, that the time of payment was according to the contract.

*Wrong reason: Correct ruling.* A judgment will not be reversed because a wrong reason is given for a correct ruling; and where the evidence does not entitle the plaintiff to recover, an instruction to the jury to that effect, is not error, whether the reasons assigned for it be correct or not.

*Heard January 8.      Decided April 9.*

Error to Kalamazoo Circuit.

*William Fletcher*, for plaintiffs in error.

*Severens, Potter & Boudeman*, for defendant in error.

CHRISTIANCY, CH. J.

Plaintiffs in error sued defendant in error in an action of assumpsit, declaring upon the common counts only, and furnished the following bill of particulars of their demand: "June 1st, 1870. One steam engine boiler, sold

| | | | | |
|---|---|---|---|---|
| | | | and delivered by plaintiffs to defendant | $1,100 00 |
| " | " | " | One steam boiler front, sold and delivered by plaintiffs to defendant, | 100 00 |
| " | " | " | One balance or fly-wheel to steam engine, sold and delivered as aforesaid | 100 00" |

The defendant pleaded the general issue, and gave notice of set-off, and also gave notice, in substance, that he would show on the trial, that said articles were sold and delivered to him under, and in part performance of, a special contract in writing, made between the parties on the 18th day of December, 1869, by which the plaintiffs agreed to make for, and sell to defendant, and the defendant agreed to purchase, one steam engine and its appurtenances (including the articles mentioned in plaintiffs' bill of particulars), at the price of two thousand dollars; payable, seven hundred dollars at the execution of the contract (which was paid accordingly); three hundred dollars when the engine should be ready for delivery; five hundred dollars in lumber (at twelve dollars per thousand), within three months after taking the engine away; and five hundred dollars in cash, eight months from the date of said agreement; said engine and its appurtenances (including said articles), to be delivered by or before the 1st day of March, 1870, and the

boiler on or before the 15th of February, 1870; in consideration of which, defendant thereby undertook and promised to pay as aforesaid; that, though the time for the completion of the contract had elapsed, the plaintiffs had neglected and refused so to make and deliver, etc., by which defendant had suffered large damages, etc.; and that he would recoup such damages in this action, etc. (in the usual form of notice of recoupment). The defendant, after all the plaintiffs' evidence was in, and they had rested, was allowed to amend by striking out, or withdrawing this claim and notice of recoupment; the plaintiffs objecting to such withdrawal on the ground, as they claimed, that defendant, by reason of this notice, had been allowed to draw out on cross-examination, evidence which could only be admissible under the notice, and not under the general issue alone; and the plaintiffs moved to strike out the evidence which they claimed to be of this character.

We shall therefore consider the case in all respects as if no notice of recoupment had ever been given; remarking here for the present, that the general issue, without any notice in an action of assumpsit, as a general rule, denies and puts in issue every fact, and every combination of facts, necessary to constitute the plaintiffs' cause of action; in other words, it denies the existence of any such state of facts, as could constitute or establish the promise declared upon, or which would entitle the plaintiffs to recover upon the cause of action alleged.

The plaintiffs opened their evidence by introducing one of their own number as a witness, who testified that plaintiffs were engaged in the business of manufacturing engines and boilers; that they had had dealings with defendant; that on the first day of May, 1870, they let him have a boiler and a fly-wheel to a twelve-inch engine, the boiler worth one thousand and thirty-five dollars, and the fly-wheel,

one hundred and eleven dollars; that some time in August following, they let him have a boiler front, worth sixty-four dollars, and that defendant came and got these articles from them, and had not paid for them. Witness was then on cross-examination asked, if the plaintiffs had a contract with the defendant for furnishing these articles. This was objected to by the plaintiffs, as immaterial, and not proper cross-examination; but the objection being overruled, and exception taken, witness answered: "We had a contract with defendant for furnishing these articles; it was in writing." And being shown the written contract, and recognizing it as the one referred to, under objection of the plaintiffs' counsel, it was read. This was the contract the substance of which has already been stated as described in defendant's notice of recoupment, with which it corresponded. The admission of this evidence upon cross-examination, is one of the errors assigned, and is among those chiefly relied upon.

We are aware of no sound or recognized theory of the action, of pleading, or of evidence, upon which this objection can be maintained. By the common law, until a very recent period, no principle was better settled, than that when there was an express contract, none could be implied; and whenever in an action based upon an implied contract, it appeared upon cross-examination of the plaintiff's witnesses (which for this purpose was always admissible), and the fact was not disputed, that the work (for instance) was done, or the goods furnished, under an express contract, differing in any respect from what the law would have implied, and which was still in force, there was an end of the plaintiff's action; unless he could show that he had fully performed the contract, so as to create a duty on the part of the defendant, to pay the money compensation agreed upon, which duty is treated as an implied promise

or contract; and upon the proof of such performance he might recover the contract price upon a count for work and labor done, or goods sold, but not upon a *quantum meruit* or *quantum valebat*.

And now that the courts, in some cases of part performance of an entire and express contract, have recognized an implied and independent contract, as arising from the benefit which the defendant has received from the acceptance and appropriation of a part of the labor or property contracted for, as will be more fully explained in its proper place, the cross-examination as to the existence and terms of the special contract, and the whole transaction connected with the performance of the work or the furnishing of the property, as in the present case, is equally pertinent.

The establishment of such a state of facts as would constitute an implied contract to pay for the articles in question, was incumbent upon the plaintiffs, and constituted the plaintiffs' case. The testimony this witness had just given on his direct examination, tended to show a sale of the articles without any specified or agreed price, and hence, to establish a duty on the part of the defendant, and therefore an implied promise or contract to pay, *whatever* the articles were *reasonably worth*, and to pay this at any moment, *upon request*. The defendant had the right on cross-examination, not only to call out any fact which would contradict or qualify any particular facts stated on the examination in chief, but any thing which would tend to rebut or modify any conclusion or inference resulting from the facts so stated, and therefore to show that the whole transaction connected with the furnishing of these articles, did not constitute such contract as that which the direct evidence of this witness tended to prove; but he could not do this, nor could it be known whether any or what contract would result, and the cross-examination

would be a mere farce, if he could not be allowed to show by it just what the whole transaction was, so far as it might be within the knowledge of the witness.—See *Chandler v. Allison, 10 Mich., 460; Thompson v. Richards, 14 Mich., 172; D. & M. R. R. Co. v. Van Steinburg, 17 Mich., 99; Turner v. City of Grand Rapids, 20 Mich., 390.*

It is hardly necessary to add, that upon these principles, all parts of the cross-examination in this case were clearly admissible under the general issue alone, though some of the facts elicited might not be as advantageous to the defendant as if the notice of recoupment had remained.

While upon the subject of cross-examination, it may be proper to state (though there is nothing in the *form* of present bill to call for it), that, judging from the form in which bills of exceptions are quite frequently presented, we infer that an erroneous notion still prevails with some members of the profession, as to the question on whose part the evidence given on cross-examination, is to be considered as introduced. Thus, it is not unusual to find in bills of exceptions, a statement of the evidence drawn out on the cross-examination, as evidence introduced by the party making the cross-examination, "tending to prove" his case. This statement is always incorrect, when used with reference to a legitimate cross-examination. All testimony elicited on such cross-examination, consisting, as it does, of facts which, though relating to the direct examination, may have been omitted or concealed in that examination, or facts tending to contradict, explain or modify such facts, or to rebut or modify some inference which might otherwise be drawn from them, must in the nature of things, constitute a part of the evidence given in chief; and both alike and together, must, therefore, be treated as evidence given *on the part of the party calling the witness.* The evidence given by the witness is not that alone

given in chief, but it is that given in chief, as contradicted, explained, enlarged, narrowed or modified by the cross-examination. It is simply the combined result of both.— See Campau v. Dewey, 9 Mich., 417, 418.

For a proper understanding of the other questions raised, it is necessary to state the substance of the further testimony in the case. The witness on his further cross-examination states, that defendant paid the seven hundred dollars mentioned in the contract, on the day of its date; that plaintiffs delivered the boiler May 1, 1870, complete, except the man-hole plate, but no smoke stack or connecting pipes with it.

On his re-direct examination, he states these were delivered under the special contract, that defendant has not received the balance of the work under the contract; that plaintiffs (as will be further explained) afterwards completed the balance of the work, except the smoke stack and some connecting pipes; that the reason they did not deliver the balance of the articles was, that defendant was demanding three hundred dollars damages for delay in completing the work; that plaintiffs had tendered defendant the balance of the work (except the smoke stack). And he then explains the circumstances substantially as follows: That plaintiffs were burned out the 2d of March, 1870; that the engine was all completed at that time, except the engine bed, cylinder, steam chest, governor and throttle valve, and the boiler was complete with some slight exceptions; that about a week after this the defendant came and sympathized with them about the calamity, and told them to go on and finish up the work, and he would take no advantage of them, that he did not know that he should be in a hurry for the work until after harvest, but should want the boiler as soon as finished; that plaintiffs put up some sheds, and completed the boiler, and delivered it to him about May 1st; that

plaintiffs rented another shop and took some of the tools and
finished up and repaired the work which had been finished in
the old shop, and damaged by the fire; that about the 24th of
June that shop (or the engine in it) gave out, and they
rented another, with tools, and finished up what they could
of the engine there; did not finish its bed, the castings
turning out to be imperfect, which they only found out in
process of working; that the next time defendant came they
told him of this, and of the necessity of making new pat-
terns and castings; defendant said he would rather wait
and have a good thing.    They cast another, but could not
finish it up till they got into their new shop, which was
then nearly completed; that defendant came about the
middle of July, after the casting had been tried, and
encouraged them by saying he would rather wait and have
good castings, and made no complaint about not having it
done in time, and said he was not exactly satisfied with the
title to his mill; that there was a mortgage on it not sat-
isfactorily settled, and he wished to decide on that before
he put in the engine and boiler; that September 1st they
planed up the engine bed, and September 3d the engine
was nearly completed; that defendant then came to the
shop and remarked that he should have damages for being
delayed in receiving the engine; that plaintiffs, not admit-
ting the justice of the claim, rather than have a law-suit,
offered to deduct two hundred dollars.    Defendant said he
would be down in the course of the next week; came on
the sixth and resumed talk about damages, but wanted them
to send down a man to superintend the erection of the
boiler work, which they did two days after; that defend-
ant came again about the 8th or 9th of September, and
they promised to have the engine ready for him the next
week, when he should come; he resumed the question of
damages; and on the 15th of September made plaintiffs a

tender of three hundred dollars, reserving the right to sue for damages, which they refused, telling him they wanted eight hundred dollars, and that if the engine was delivered, it must be an unqualified delivery. He refused to take the engine under these conditions (but it further appeared on the cross-examination of another witness, that defendant at this time tendered a chattel mortgage on the machinery mentioned in the contract, which plaintiffs refused only on the ground that by the contract eight hundred dollars was then due instead of three hundred dollars, and they would not take the mortgage including the other five hundred dollars, which they claimed to be already due). The witness (first mentioned) proceeds to say (on his re-direct examination), that plaintiffs told defendant they were ready at any time when he would take the engine, etc., when it was set up in its place, to take the measurements of the connecting pipes, smoke stack, etc., and make and put them up, but they could not well be made till this was done, as accurate measurements were necessary; that defendant has never returned the articles delivered to him, nor offered to return them.

On his re-cross-examination he states, that the engine had not been delivered, and is then asked what is the value of such an engine as was specified in the contract. This question being objected to, and the objection overruled, he states that the plaintiffs had since sold this engine for one thousand three hundred dollars; that some of the articles not delivered, were:

| | |
|---|---:|
| Smoke stack and breaching, worth | $75 00 |
| Steam gauge, $8, three water gauges, $1 each | 11 00 |
| Safety valve, $25, grates, $33 | 58 00 |
| Man-hole plate, $5, pump, $3 | 8 00 |
| Superintending setting up engine, and erection of brick work, $30, of which they had supplied $10 | 20 00 |

Value of undelivered engine and articles_____ 1,477 00

Plaintiffs also gave evidence by another witness, that the boiler, when delivered (without the man-hole plate not delivered), was worth_____ $950 00

The fly-wheel, as delivered, about_____ 111 00

And the boiler front, delivered_____ 64 00

$1,125 00

It was conceded by the defendant, that he had used the boiler and boiler front, up to the time of the trial, and that he had sold the fly wheel for fifty dollars, since this suit was commenced.

Here the plaintiffs rested, and defendant, offering no evidence, was allowed to amend, by striking out the notice of recoupment, as already stated.

Now, before entering upon any of the questions arising upon the specific exceptions, it is proper to notice one very important feature of the case, bearing strongly upon the merits, which the evidence forces upon our attention. I allude to the significant fact, that all the evidence bearing upon the point tends to show, and (there being none to the contrary, and all being introduced by the plaintiffs themselves, and therefore, being their own showing) the fact may, as against the plaintiffs, be assumed as conclusively established, that the special contract was a losing one to the plaintiffs; that if they had completed it, even after the extension of time to which the evidence shows the defendant assented, and the defendant had paid the contract price, just as the plaintiffs claim he ought to have done, they would have lost largely, instead of gaining, by the performance of the contract; since the engine itself (sold for one thousand three hundred dollars), together with the portion of the contracted articles delivered (the lowest valuation by the evidence, one thousand one hundred and twenty-five dollars), amount to more, by four hundred and twenty-five

dollars than the contract price of the whole,—to say nothing of the portion still in the hands of the plaintiffs, not disposed of, which one of them testifies to be worth one hundred and fifty-two dollars, and which, though they may not be readily salable (but this does not appear), must be worth something, besides twenty dollars' worth of work in superintending, saved by not performing the contract. And, though defendant had paid only seven hundred dollars, that sum alone, together with the one thousand three hundred dollars, for which the plaintiffs sold the engine, covered the whole contract price.

It is therefore clear that if they had completed the contract on their part, and tendered the whole of the undelivered portion of the property to the defendant, on the 15th of September, unconditionally, and he had refused to take and pay for it, and they had brought suit upon the contract, to recover for the portion delivered, and damages for the defendant's refusal to take and pay for the balance, or for being prevented from performing the contract, they could (after allowing the seven hundred dollars paid) have recovered *nominal damages only*, as they would have gained largely instead of losing, by the defendant's breach. But the plaintiffs do not sue upon the contract, and not having fully completed it, they could not have recovered if they had. And if prevented from performing by the acts of the defendant, they could only sue upon the special contract for damages on this ground, and not upon the common counts.

The only possible theory of the action, upon which they could recover at all, is that upon which it is evident (from their declaration, and the evidence in chief, with which they undertook to support it, without reference to the special contract) they did proceed; which is this: That notwithstanding the articles delivered were a part only of

those agreed to be furnished upon a special contract, which was entire in its nature, providing one gross sum for the whole, yet, the delivery of a part of the contracted articles only, and the defendant's acceptance and appropriation of these, had conferred a benefit upon him, and created a corresponding duty or implied contract, separate from, and independent of, the special contract, to pay what such delivered portion of the articles was reasonably worth; leaving to the defendant the right to recoup in this action, or to recover in another, such damages as he might be able to show he had sustained by plaintiffs' failure to perform the special contract. That an action upon such implied contract may, upon proper evidence, be maintained upon these principles, has been settled by the decisions of this court.—*Clark v. Moore, 3 Mich., 55; Ward v. Fellers, id., 281; Allen v. McKibbin, 5 Mich., 449; Strong v. Saunders, 15 Mich., 339.*

This theory of the action does not proceed upon the idea of repudiation or recision by the plaintiffs, of the special contract, but is entirely consistent with the full admission of its continued existence and force, though it involves an admission by the plaintiffs of their inability to perform it, or, at least, an abandonment of the attempt to perform it. The plaintiffs, therefore, were not bound to repay to the defendant the seven hundred dollars received by them upon the contract, so as to place him in *statu quo*, before instituting their suit, as was very strenuously insisted by the counsel for defendant in error. But that sum having been paid by the defendant upon a contract, the performance of which the plaintiffs had abandoned, was so much money in the plaintiffs' hands for the defendant's use, of which he was entitled to the benefit, under his notice of set-off.

But the action, upon this theory, being an innovation upon the common law (which in such cases permitted no

recovery, in any form, for such partial performance, but required substantial performance of the entire contract, as a condition precedent to the right of recovery), and actions of this kind being based upon the broad principles of equity, and recognized and admitted into the law only for the purpose of avoiding the gross injustice which might otherwise happen in some cases of part performance, where the plaintiff had honestly attempted to perform, it should, I think, be confined to cases in which the application of the strict principles of the old common law would savor of hardship and injustice, and should, therefore, never be allowed to a plaintiff who has wantonly or in bad faith, or as mere matter of speculation, refused to perform his contract. The action, originating in a spirit of equity and for the relief of hardship, should not be perverted from the purpose of its origin.

I do not mean to say that there is any evidence in this case, tending to show bad faith on the part of the plaintiffs, or a wanton refusal to perform their contract; but the hardship to be remedied is not manifest. And as the law cannot, without encouraging the breach of contracts, permit parties to gain by breaking them, we held in *Allen v. McKibbin* (which was an action upon the common counts in a case of part performance of a special contract), that the plaintiff cannot be allowed to recover more than the contract price; and that he cannot recover this, if the work is not reasonably worth it, or if, by paying it, the rest of the work will cost the defendant more than if the whole had been completed under the contract.

These principles applied to the present case, would defeat the plaintiffs' action, upon the plea of the general issue alone; since, if the plaintiffs are entitled to no more than the contract price, they have already received all the compensation the law will allow them to recover, in the seven

hundred dollars paid by the defendant, and the one thousand three hundred dollars for which they sold the engine, making the entire contract price for the whole, leaving a considerable amount of the contracted articles still in their hands.

But in *Allen v. McKibbin*, the defendant was in no way in fault; and we held in *Kearney v. Doyle*, 22 *Mich.*, *294*, that if the plaintiff had, by the fault of the defendant who had practically repudiated the contract, been deprived of the opportunity of performing it (or, which is the same in effect, if he had prevented the plaintiff from performing, after part had been performed), the plaintiff should not, as to the part performed, be limited to the contract price, but might recover the value, though in excess of that price. And it is insisted by the counsel for the plaintiffs in error, that the present case falls within this principle, because, as he contends, the defendant prevented the plaintiffs from performing.

But, though this evidence tends strongly to show (and there being none to the contrary, may be said to establish the fact), that defendant had consented to the delay and waived damages on that ground, it fails to show that he was legally in fault as to the final performance by the plaintiffs, or that he, in any proper sense, prevented performance on their part, or justified by his actions, their non-performance; while it does show that the plaintiffs, without legal justification, stopped short of performance.

When the dispute arose between the parties, as to the damages claimed by the defendant, and the amount then due upon the contract (September 15th), and the work was about all done and ready for delivery, the plaintiffs claiming eight hundred dollars to be then due and payable, in effect refused to deliver, or to tender delivery upon any other terms than upon the payment down of eight hundred dol-

lars and the relinquishment by the defendant of all claim for damages for delay; so that he could not accept the proffered delivery, without in effect releasing his claim. Admitting for the present, that eight hundred dollars was then due as claimed, to put the defendant in default and themselves in the right, they should have offered to deliver upon payment of that sum, without imposing any condition that he should abandon his claim, or pretended claim, for damages. Such a tender by them would have been no implied admission ·of the validity of his claim, and he, upon the refusal of such an offer or tender, would have been put in default.

On the other hand, the defendant did properly tender to them the three hundred dollars (which by the contract was payable on delivery), and a chattel mortgage for the balance, one thousand dollars, which mortgage was a compliance with the contract, if the postponement of the performance of the contract, on the part of the plaintiffs, with the assent of the defendant, had the effect to postpone also the five hundred-dollar payment, whch was made payable at eight months from its date. If, under the circumstances, this installment had been thus postponed, then the tender by the defendant of the three hundred dollars, and the chattel mortgage for the one thousand dollars, was good; and by declining it, and refusing to complete the contract, the plaintiffs put themselves in default; for the tender by the defendant was not conditional, in any such sense, at least, as would vitiate it. The fact that he claimed he had a right to damages for delay, did not call upon the plaintiffs for any admission of the validity of that claim, nor would their acceptance of the tender have amounted to such admission. Had such been its effect, the tender would not have been good.

Was then, this five hundred dollars due on the 15th

September, 1870, when the defendant tendered the three hundred dollars and the mortgage, or was the effect of what had taken place between the parties such as to postpone its payment to a later period?

By the original contract, it is true, which was dated December 18th, 1869, this five hundred dollars was required to be paid eight months after its date, which would make it payable on the 18th day of August, 1870. But by the same contract the engine, and all the contracted articles, were to be completed and delivered by the 1st day of March, 1870, five months and eighteen days prior to the day fixed for this payment. It is manifest, therefore, that the parties, in making the contract, did not contemplate that this payment should be made on the completion of the contract, but that there was to be a credit of over five months for this sum, after the completion of the contract by the plaintiffs, and the reception of the property by the defendant. And the contract further provided for a chattel mortgage to secure the payment of it (with another like amount).

But the shop of the plaintiffs was burned, and the time of completing the contract, was consequently postponed from time to time with the assent of the defendant, and for their accommodation, until the 15th of September, 1870, and the evidence furnishes no reason to infer that defendant assented, or would have assented, to the postponement of that part of the contract which they were to perform for his benefit, without the like postponement of the stipulations which he was to perform for their benefit, especially as the former were the consideration for the latter.

In the absence of any evidence to the contrary, the inference is strong, and conclusive, that the postponement of the plaintiffs' performance with the assent of the parties, was understood, and intended to postpone for a corresponding period all the stipulations for payment on the part

of the defendant.  The action of the plaintiffs themselves, tends in some degree to show that such was their understanding.  The eight months expired on the 18th of August, but they never called for payment of this five hundred dollars until the 15th of September, after the dispute arose between the parties upon the question of damages.

The case does not show at what time the chattel mortgage tendered, was made payable ; but being objected to only upon another ground, and not because not payable at the proper time, was an admission that it was not objectionable as to the time, if any time was to be given, but simply because it was claimed that this sum should be paid down.  We must, therefore, infer that it was made payable within five months and eighteen days from September 15th.  We must, therefore, treat the tender, both of the three hundred dollars and the mortgage, as sufficient to put the plaintiffs in default.

There was, therefore, no ground upon which the plaintiffs could claim for the portion of the articles delivered, more than the contract price ; and this, and more than this, as we have already seen, they had received, and actually made a profit, or, which is the same thing, avoided a loss, by failing to perform their contract.

The circuit judge was, therefore, correct in instructing the jury that, upon the evidence, the plaintiffs were not entitled to recover.  The reason assigned by him may not have been in *form*, the true one in theory,—viz.: that it would cost the defendant more to complete the contract, to purchase the balance, including what had been paid, than the contract price.  What " it would have *cost him more*," might, perhaps, be said to be one element of his damages for the non-performance of the contract, of which he could not be allowed the benefit *in that suit*, after having withdrawn his notice of recoupment.  But whether this be so

or not, the fact that the plaintiffs could not recover at all, without exceeding the contract price, which they were not entitled to do, made the conclusion itself correct.   And no evidence having been improperly admitted or excluded, and there being no evidence tending to show any state of facts upon which the plaintiffs were entitled to recover, it is not necessary to notice the particular points raised by the requests to charge.

The judgment must be affirmed, with costs.

The other Justices concurred.