Scott J.
As to the competency of the question propounded by the plaintiff below, to his witness, Chapman, in his examination-in-chief, it is certainly not easy to perceive any legitimate bearing that an inquiry into the present value of John M. Martin’s homestead property, or as to the present value of the other lots in controversy, could have upon the facts in issue between the parties. It certainly could throw no reliable light on the question of their cost a number of years previously.
We are inclined to think that the question was, at least, not relevant to the issues made by the pleadings ; and that the objection to it should have been sustained..
But whether the answer of the witness (which is shown by another bill of exceptions) was prejudicial to the plaintiffs in error, so as to require a reversal of the j udgment bn account of its admission, we find it unnecessary to determine.
Eor, we are clearly of opinion that the court below erred in refusing to permit this same witness to answer the questions put to him, on cross-examination, by defendants below. Those questions were, in every respect, pertinent and proper. The importance of the right of full cross-examination, of an adverse witness, can scarcely be overestimated. As a test of the accuracy, truthfulness, and credibility of testimony, it is invaluable. It is the clear right of a party cross-examining', to elicit suppressed facts, which weaken or qualify the case of the party examining in chief, or support the case of the cross-examining party. Powell on Ev. 380. “In any view, the right of cross-examination extends to all matters connected with the res gestee.” Wharton’s Law of Ev. § 529. A witness may be cross-examined, as to his examination in chief, in all its bearings, and as to whatever goes to explain or modify what he has stated in his examination in chief. Wilson v. Wagar, 26 Mich. 452.
*288 In the case before ns, the witness, Chapman, on his examination in chief, had testified that John M. Martin had, at a specified time, opened an account in his bank, by depositing therein moneys in his possession, in the name of his son, James Martin. The vital question in the case, was-whether the moneys thus deposited belonged to John M. Martin or to his son, in whose name they were deposited., The plaintiff below was interested in showing that these moneys, in fact, belonged to his debtor, John M. Martin.. Eor this purpose, he proved by the witness, that John M-Martin had the moneys in his possession, which was prima facie evidence of ownership, and that he exercised the rights-of apparent ownership over them, by depositing them in witness’ bank. This evidence, unexplained, would tend strongly to show that John M. Martin was depositing his-own money, for a fraudulent purpose, in the name of his son. To counteract the effect of this testimony, the witness was asked, on cross-examination, to tell what John M. Martin said about the money at the time of depositing it.. The court refused to allow this question to be answered. We think his declarations, made at the time of making the deposit, were, to all intents, as much a part of the res gestae,. as was the fact of the deposit itself.
The defendants had a right, if they could, on cross-examination, t-o repel the prima facie inference, arising from the examination in chief, that John M. Martin was dealing with these funds, as his own, by showing that he professed, to be acting only as an agent for his son, who had sent him the funds for the purpose of being deposited to his credit..
So far as this testimony might'tend to qualify or explain' the testimony in chief of the witness, it was clearly competent, and the court erred in excluding it. Besides, the witness testified that he placed the funds deposited, to the credit of James Martin, “by the instructions of John M. Martin.” He was thereupon asked, on cross-examination, “ What language did John M. Martin use in giving those instructions ?” • The court did not allow this question to b» answered. Eor the fair import of the language used by *289 John M. Martin, he might well be held responsible; but the court refused to hear what he said, and held him bound by the construction put upon his language by the witness.. We find it impossible to justify this ruling of the court, or-to resist the conviction that the plaintiffs in error were deprived of their right of proper cross-examination.
It is claimed, however, that the judgment in question can not be, for that reason, reversed, because it is not shown what the plaintiffs in error expected or offered to prove by way of answers to the questions propounded on cross-examination. But we think this rule can have no proper application to the cross-examination of a witness. The plaintiffs in error did not call Chapman as a witness for the purpose of proving anything. He was a witness called by the adverse party, and they were seeking to extort from him a qualification of his testimony in chief. They can not be presumed to have known what his answer's would be to questions propounded in proper cross-examination.. Nor would they be bound by such answers. The value of a cross-examination, as a test of truth, would be lost in the-case of a crafty and unreliable witness, if the examiner were-bound to disclose, in advance, the purpose and intent of every question asked. As was said by Welch, J., in the-case of Burt v. State of Ohio, 23 Ohio St. 402: “I know of no case where the rule requiring such a disclosure has been applied to a cross-examination.” Where a witness, on his examination in chief, testifies to important facts in favor of the party calling him, we think prejudice to the-adverse party should be presumed to arise from the denial of the right to a fair and proper cross-examination. And for the error of the court below, in the denial of this right,, its judgment will be reversed.
It is, therefore, not essential to a proper judgment in this proceeding, that we should consider the farther error assigned, and inquire whether the findings and decree of the court below were warranted by the pleadings and evidence-in the case. But, in view of another trial, it is proper to- *290 say that we have examined the evidence with a good deal of care, without discovering anything to justify some of the findings of the court.
The court found that James Martin had permitted his father John M. Martin to deposit the sum of $1,300 in his name, in bank, and there remain for the purpose of hindering, delaying, and defrauding the creditors of John M. Martin; that he holds the same as trustee for said creditors, .and ought to be required to account for the same to the •court, and for that sum with interest from September 10, 1872, judgment and execution was awarded against him.
We have looked in vain for the evidence on which this particular finding and judgment can properly rest.
We are also of opinion that the decree ordering the unconditional sale of all the lots in controversy, was not warranted either by the allegations of the petition or the findings of the court. The petition was not filed on behalf of the creditors of John M. Martin generally, but for the single purpose of subjecting the lots in question to the payment of the judgment held by Elden, the plaintiff below.
The petition charged, and the court found no other fraudulent purpose in the conveyances to and by Stinson, than that they were so made to prevent the plaintiff from levying on the lots, and so to hinder him in the collection of his judgment. No other creditors, if there were any, intervened, or were made parties to the suit. The decree should, therefore, in no event, have ordered the sale of more property than would be sufficient to satisfy the plaintiff’s •claim, with interest and costs.
A.s to the weight of the evidence in regard to fraud in the purchase and improvement of the lots in question, as charged in the original petition, we think it proper to express no opinion.

Judgment reversed, and cause remanded.