HANNAH A. CALLISON v. A. E. SMITH, *Sheriff*, &c.

1. EVIDENCE; COMPETENCY; *Admissibility of Testimony Taken on Cross-Examination.* The ordinary rule is, that the cross-examination of a witness is limited to matters upon which he has been examined in chief; and this rule obtains whether the witness is present and examined at the trial, or his testimony taken by deposition. Hence, where to impeach one of plaintiff's witnesses, a deposition is offered, in which the deponent testified to different statements made by such witness outside the court, and upon the objection of plaintiff the testimony in chief in said deposition as to such statements was excluded for lack of sufficient identification in time and place, it is error, over such objection, to permit the cross-examination of the deponent as to said statements to be read to the jury.

2. INSTRUCTION; *Preponderance of Evidence; Error.* The court instructed the jury that, to justify a verdict in favor of the plaintiff the preponderance of testimony in his favor must be such "as *clearly* outweighs the evidence on the other side." *Held,* That such instruction was misleading, and in a doubtful case in which the verdict was returned for defendant, was error sufficient to call for a reversal.

*Error from Wilson District Court.*

REPLEVIN, brought by *Hannah A. Callison,* a married woman, to recover the possession of two horses and two mules, of the aggregate value of $500. The plaintiff claimed to be the owner of the property in controversy, and that the same was wrongfully detained from her possession by the defendant. Defendant *Smith* claimed that the property belonged

to Absalom Callison, the husband of the plaintiff, and that he held it, as sheriff of Wilson county, under an execution against the said husband. The case was tried at the May Term 1876 of the district court. The only witnesses examined on the part of the plaintiff, were the plaintiff herself, and her husband. Regarding the ownership of the property, and the possession thereof, Mrs. *Callison* and her husband testified, in substance, "that the mother of Mr. Callison, plaintiff's husband, gave to plaintiff $1,000 in money; that plaintiff had invested a portion of that money in the property in controversy; that plaintiff had employed her husband, at the stipulated price of $25 per month, and board and washing, to attend to her business for her as her agent." It was admitted by defendant that plaintiff's husband had listed the property for taxation in his own name as owner. Other testimony on the part of defendant, and the ruling of the court thereon, are stated in the opinion, *infra*. The court, after stating the nature and character of the action, instructed the jury as follows:

1. Defendant, as sheriff, claims the right to the possession of the property under levy thereon made by him by virtue of a writ of execution held by him against Absalom Callison, plaintiff's husband. The defense is, that there was a fraudulent conveyance; that the claim of ownership on the part of the plaintiff is a fraud upon the creditors of her husband. Under the laws of the state of Kansas, a woman can hold property the same as a man can.

2. The burden of proof in the case is on the plaintiff. She must prove the ownership of the property by a preponderance of testimony. By a preponderance of testimony, I do not mean such a preponderance as satisfies beyond a reasonable doubt, as in criminal cases, but only such a preponderance as *clearly* outweighs the evidence upon the other side.

3. You are the exclusive judges of the evidence, and of the credibility of the witnesses.

4. Fraud is never presumed, but must be proved like any other fact. The court instructs the jury that fraud assumes many shapes, disguises, and subterfuges; and is generally secretly hatched; that it can only be detected by a consider-

ation of facts and circumstances which are not unfrequently remote and disconnected. A wide latitude of evidence is therefore allowed, in order that it may be detected and exposed. This principle arises from necessity, and is established for the protection of society. Fraud consists of unlawful conduct that operates prejudicially to the rights of others. To defraud, is to withhold from another what is due to him, or to deprive him of a right, by deception or artifice; and fraud upon creditors consists in the intention to prevent them from recovering their just debts by an act which withdraws the property of the debtor from their reach. There are certain acts which, when proven, that the law terms "badges of fraud," "evidence of fraud," "signs," etc. These terms are all synonymous, and denote an act with a fraudulent aspect — an inference drawn by experience from the customary conduct of mankind, and hence may be defined a fact calculated to throw suspicion on the transaction calling for an explanation. The plaintiff claims that she owns the property in question; that it was purchased with her means by her husband, he acting as her authorized agent. The defendant insists that the purchase of the property was made by the husband with his own means, but for the purpose of deceiving and defrauding creditors the purchase was made in the name of his wife. Therefore if you should find that the husband purchased the property with his own means, you will find for the defendant, although the husband at the time acted as the agent of the wife, or pretended so to act.

5. The jury is further instructed, that if a part of the purchase-price of any part of the property in question was that of the husband, and the wife mingled her property or means with that of the husband for the purpose of concealing the husband's interest in the same, she cannot recover for such property for the purchase of which her property was so commingled.

Verdict and judgment for defendant. New trial refused; and plaintiff brings the case here for review.

*J. W. Sutherland,* and *Sterry & Sedgwick,* for plaintiff:

1. While realizing the full force of the oft-repeated decision of this court, that it will not reverse a judgment of a district court upon the ground that the verdict upon which it is rendered is not sustained or warranted by the evidence, if

Brief of Plaintiff.

there is any evidence at all upon which a verdict could possibly be based, or if there is any evidence tending in any way to support the issues upon the side in favor of which the verdict is rendered, yet we think that in the case at bar we have one of those rare cases wherein the verdict of the jury was contrary to *all* the evidence in the case, and notwithstanding that it has been sustained by the court below. The record contains all the evidence. We think that a careful examination of the evidence cannot help but produce, in the mind of the court, the conclusion that there is no evidence disclosed by the record which in any way suggests or sustains the verdict rendered. It may possibly be claimed by the defendant that the list of personal property returned to the assessor by A. Callison furnished some evidence for the jury to hang their verdict upon. But this cannot possibly be correct, as it was not shown that these lists were made with the knowledge or consent of the plaintiff, and therefore in the absence of such a showing they could furnish no evidence that in any way tended to disprove the plaintiff's case. It may be claimed that the testimony of Lucas Covert, jr., tended to furnish evidence upon which the verdict could be based. But assuredly this cannot be so. That evidence could only have been considered, if at all, as impeaching A. Callison, and could not be considered as disproving plaintiff's claim. The truth of the whole business is, and was, that it is very difficult for juries, in this state, composed of men coming, as most of them have, from states in which the common-law ideas in relation to the rights of married women prevail, to understand or appreciate the rights that have been accorded to married women in this state by our liberal laws; and the jury in the case at bar must have come to the conclusion that Callison's mother, in giving this $1,000 to his wife, instead of to him directly, committed a fraud upon Callison's creditors, and that a wife could not make such a contract as she testified she made with her husband. While a court or jury might, perhaps, be warranted in thinking that this whole affair was suspicious, yet we submit that verdicts should not

be upheld that show that they must have been rendered upon mere suspicion alone, unsupported by evidence. 44 Mo. 132.

We submit also that Callison's mother had a perfect right to dispose of her money with which she intended to start her son's family again with in the world, in such a manner as that the creditors of her son could not reach it — that she had the right to give it to his wife, and that his wife had a perfect legal right to make the contract with 'her husband that she testified to. 9 Kas. 466.

2. Defendant took depositions of sundry witnesses, among them the depositions of Lucas Covert, jr., and W. T. Davis. The court refused to admit their testimony elicited on their examination in chief by defendant, but did admit what they testified to when cross-examined by plaintiff. Now it seems to us that the proposition is too plain for argument, that having excluded the direct examination upon which this cross-examination was based, that it was the duty of the court, at the request of the plaintiff, to have excluded it also, and that in not so doing it committed a prejudicial error against the plaintiff, as the court will readily see that the jury must have based their verdict upon this testimony, if they based it upon any testimony at all. But this evidence was utterly incompetent for the purpose of disproving the ownership of the plaintiff to the property in question, and could only have been competent under any circumstances for the one purpose of impeaching the credibility of plaintiff's witness, A. Callison; and as no time and place was fixed by the witness at which this purported conversation with Callison took place, it was utterly incompetent for such purpose; it can be no answer to say that this was testimony called out by the plaintiff herself upon cross-examination, because, as we have shown already, it was at the time it was taken legitimate cross-examination as to matters testified to by the witness in chief, and was therefore not only a part of the evidence given in chief, but also to be considered as evidence given on behalf of the defendant. 26 Mich. 452.

3. There is grievous error in the instructions given to

the jury. The 2d instruction, it seems to us, is a much more unfortunate explanation of what a party who has the burden of proof on his shoulders must do in order to recover than the one given by the district court in Retford's case, (18 Kas. 245,) which this court held to be erroneous. We believe that it is an undisputed proposition that a party who has the burden of proof upon a given issue can recover upon such issue by such a preponderance of evidence as *merely* outweighs that of the other side, and that he is not obliged to have his evidence *clearly* outweigh the evidence of the other party. 67 Ill. 545.

The 4th instruction was alike inapplicable and prejudicial. However correct as abstract propositions the law thus given might be, there was no evidence in the case warranting such instructions; and being thus given by the court, the jury had a right to infer that to the mind of the court there was evidence in the case tending to show "badges of fraud," and such evidence must be the evidence as to Callison's mother furnishing the plaintiff money, and the plaintiff making the contract she did with her husband. Now we submit, that whenever an instruction is given without any appreciable evidence upon which to base it, if it is prejudicial it will be such an error as calls for a reversal. 38 Iowa, 581; 9 Wallace, 544.

Again, it seems to us that it cannot possibly be contended that there was the slightest evidence upon which to base the 5th instruction; and from this instruction the jury had the right to infer that the court thought some such evidence had been introduced. In any view of the case this instruction did not correctly state the law, for we submit that a wife has a perfect right (the husband willing) to commingle the husband's property with her own so as to conceal the husband's interest, if it is not done with the intent to defraud creditors.

*James A. McHenry*, for defendant:

1. There are only three questions in this case. Is there any evidence to support the verdict? Where the defendant

relies upon a general denial he may frequently obtain a ver-
dict without any evidence to support it.   If the plaintiff fails
to introduce any evidence, or only introduces such testimony
as no reasonable jury could possibly believe, the defendant
would likely recover.   Did the plaintiff in this case produce
sufficient evidence to justify a jury in giving her a verdict?
The only witnesses on her behalf were herself and husband,
the judgment-debtor.   They tell their stories, which however
are "as transparent as the soup of which Oliver Twist im-
plored an additional supply." (3 Kas. 521.)   The jury needed
an "additional supply" of evidence before they could find for
the plaintiff.   Why did not this "mother-in-law," (who seems
to be an improvement on the general run of mothers-in-law
of the present age,) appear as a witness?   *She* surely knew
all about it; and who can better tell what she knows than a
*mother-in-law?*   Perhaps the jury failed to see that "impress
of truth," which so convinces juries, in the testimony of those
witnesses.   Did they tell *likely* stories?   Is it likely that a
mother would give that $1,000 to the daughter-in-law instead
of to her own son?   Is it likely that she would give $1,000
to her daughter-in-law, and nothing to her own children?
Is it likely that the plaintiff would invest her money in fast
horses and colts?   Is it likely that she would with the money
she received from her husband's mother hire her husband for
the paltry sum of $25 per month, and "washing and mend-
ing"— make him a

> . . . . .  "Milk-liver'd man,
> That bear'st a cheek for blows, a head for wrongs—
> Who hast not in his brows an eye discerning
> His honor from his suffering."

The court below instructed the jury that, "You are the
exclusive judges of the evidence, and of the credibility of the
witness."   The jury had the undoubted right to disregard
the testimony of any particular witness or witnesses if they
were not worthy of belief.   And how can this court say but
that the jury saw fit to disregard these witnesses, and that the
jury were justified in so doing?   The jurors saw the witnesses
upon the stand, and heard them testify.   That may also have
had some influence upon the trial court, who also heard and

saw these witnesses, and subsequently refused to set aside the verdict.

We think that, conceding the burden of proof to be on the defendant, there is sufficient evidence to support the verdict, as, the declarations made by A. Callison, while in possession of and controlling the property — mortgaging it to secure his individual debts — having it assessed in his own name — using it as his at will — taking money out of his business at about the time his mother is said to have given this $1,000 to plaintiff.

2. There was no error in admitting the depositions of Davis and Covert. The general rule was substantially if not literally complied with in each case. A more stringent compliance, if required, would defeat the production of impeaching or contradicting testimony.

3. The court did not err in instructing the jury on the law of fraud. It was defendant's theory throughout the trial of this case, that plaintiff's claim to this property was and is a fraud of the grossest kind. Counsel for plaintiff themselves in their brief say, "a court or jury might perhaps be warranted in thinking that this whole affair was suspicious." What "*whole affair* was suspicious"? This put-up job of plaintiff and her husband, which they undertake to swear through, and thereby defeat his (the husband's) creditors? The "whole affair" "suspicious," and yet not allow the court to instruct the jury as to the law affecting "suspicious" transactions?

But were the instructions applicable? The plaintiff is the wife of the judgment-debtor; (Bump on Fraudulent Conveyances, 54, 55;) the omission of an important witness, (the mother-in-law,) to testify; (Bump, id. 52, 53;) investing a portion of this money in a fast colt; (Bump, id. 50, 51;) the plaintiff hiring her husband at $25 per month, and "washing and mending," is entirely outside of the usual course of business and the observations and experiences of life. What was their object in making such a contract? Does the evidence disclose the fact that they lived up to it?

It discloses the contrary. No wonder that counsel for plaintiff thought that the "whole affair was suspicious."

The opinion of the court was delivered by

BREWER, J.: This was an action of replevin, brought by plaintiff in error to recover the possession of certain personal property taken on execution as the property of her husband.

The first proposition presented to our consideration is, that the verdict is against the weight of the evidence. We cannot sustain this claim. True, the plaintiff and her husband both testified that the property was hers, bought with money given to her by her husband's mother; and there is only circumstantial evidence bearing against this positive testimony. But the contract testified to by plaintiff and her husband is of a character which taxes most severely our credulity, and which it seems to us requires but slight circumstantial testimony to overthrow. We cannot agree with the learned counsel, that because a witness testifies to a matter it must be believed unless there be testimony directly impeaching the witness, or contradicting the testimony. The very matter stated by the witness may be too improbable to be believed by any intelligent person, and its mere statement is its own refutation, without a word of impeaching or contradictory testimony.

*Weight of evidence; reasonableness of testimony.*

Again, error is alleged in admitting certain impeaching testimony in the cross-examination of a witness whose testimony was taken by deposition. The facts are these: Anticipating that the husband of the plaintiff would be called as a witness, the defendant took the depositions of certain parties in Indiana for the purpose of impeaching his testimony by proof of different statements outside of court. In such depositions certain questions were asked and answered upon the direct examination as to statements made by Callison; on cross-examination, further inquiry was made as to these statements. Now upon the trial the court excluded the testimony in chief in the depositions respecting the statements, for lack of a sufficient

*1. Evidence; cross examination; admissibility.*

identification of time and place, but admitted the cross-examination, and admitted it too upon the offer of the defendant, and over the objection of the plaintiff. In this the court erred. As a rule, the admissibility of a cross-examination depends upon the admissibility of the direct examination. If upon any matter the testimony in chief is excluded, no cross-examination thereon is allowed. The fact that testimony has been taken by deposition before the trial, in no manner affects the question of the competency of each and every part of it. Its competency is determined in the same manner, and upon the same principles, as though the witness was present on the stand and being interrogated in person. A question which, if the witness were present, counsel could not ask, cannot be asked in deposition; and if asked and answered, must be stricken therefrom. In the case of *Wilson v. Wager*, 26 Mich. 452, the court, by Christiancy, J., says: "All testimony elicited on such cross-examination, consisting as it does of facts which, relating to the direct examination, may have been omitted or concealed in that examination, or facts tending to contradict, explain, or modify some inference which might otherwise be drawn from them, must in the nature of things constitute a part of the evidence given in chief, and both alike and together must therefore be treated as evidence given *on the part of the party calling the witness.*" It follows from this, that the testimony elicited upon the cross-examination of the witness by the plaintiff must be taken as evidence on the part of the defendant. It may be remarked that this testimony is not that of the statements of a party to the suit, and therefore competent as an admission; nor of a prior owner while in possession, for the fact of his ownership at any time is the matter in controversy; nor is there anything in this cross-examination any more than in the direct sufficiently identifying time and place. So that the only ground upon which its admissibility could be claimed was, that it was testimony called for by plaintiff, and which having once elicited he could not withdraw. But when we remember that each question, as it comes in a deposition, is to be ruled upon as

though the witness were personally present, that the testimony elicited upon cross-examination is really the testimony on the part of the party calling the witness, and that the testimony is not offered until the deposition is presented to be read, it is apparent that the court erred in admitting the cross-examination of a witness as to statements made by one not a party to the suit, after his direct examination thereon had been excluded.

Another objection is to this instruction:

"The burden of proof in this case is on the plaintiff. She must prove the ownership by a preponderance of testimony. By a preponderance of testimony, I do not mean such a preponderance as satisfies beyond a reasonable doubt, as in criminal cases, but *only such a preponderance as clearly outweighs the evidence upon the other side.*"

It is insisted that if there be the slightest preponderance in the plaintiff's testimony over that of the defendant, the former is entitled to the verdict, and that, by the use of the term "clearly," the jury would naturally be mis-led, and understand that the plaintiff's case must be fully and abundantly established by the testimony, and so as to be easily apparent to any and every one. We think there is force in this, especially in a case like the present where the testimony is conflicting, and the facts doubtful. The jury may well have found for the defendant because the plaintiff had failed to clearly prove her case. They may have been loth to believe in the verity and *bona fides* of a contract so remarkable as that testified to by plaintiff and her husband, and yet not wholly disbelieved their testimony, and so under the instruction found that the preponderance was not clearly with the plaintiff. Of course, there may be many cases in which there is no possibility of a jury's being misled by such an instruction, but in this case it seems to us very possible that they were. The case of *Field v. Kinnear*, 5 Kas. 233, is in this respect very much in point.

We think also the instruction as to the effect of a purchase with the mingled means of husband and wife, hardly applicable to any of the evidence in this case. But for the

two errors above named the judgment will be reversed, and the case remanded for a new trial.

All the Justices concurring.