BLADECKA *v.* BAY CITY TRACTION & ELECTRIC CO.

1. STREET RAILROADS—PERSONAL INJURIES—DISCOVERED PERIL—
QUESTION FOR JURY.

In an action for personal injuries, where the evidence warrants
the inference that defendant's motorman recklessly ran his
car into plaintiff's vehicle which was standing in a place of
danger, the question of defendant's negligence after discov-
ering plaintiff's danger was properly submitted to the jury.[1]

2. EVIDENCE—OPINION EVIDENCE—ADMISSIBILITY.

A witness who had had 17 years' experience as motorman and
conductor, was familiar with the place of injury and the car
in question, and was informed as to the weather conditions
on the day of the injury, was competent to testify in regard
to the distance in which a car, running at various rates of
speed, could be stopped.

[1] As to doctrine of "last clear chance," see note to *Bogan* v. *Rail-
road Co.* (N. C.), 55 L. R. A. 418.

3. Same—Appeal and Error—Harmless Error.

> Testimony of said witness that the place of injury was frequently congested by travel, if erroneously admitted, was not so prejudicial as to justify a reversal.

Error to Bay; Collins, J. Submitted November 17, 1908. (Docket No. 85.) Decided December 21, 1908.

Case by Harriet Bladecka against the Bay City Traction & Electric Company for personal injuries. There was judgment for plaintiff, and defendant brings error. Affirmed.

*Weadock & Duffy* (*L. N. Sharpe*, of counsel), for appellant.

*Pierce & Kinnane*, for appellee.

Blair, J. This is an action to recover damages for injuries received through a collision with one of defendant's electric cars. The collision occurred on the same bridge approach, and in nearly the same place, as that in the case of *Daniels* v. *Electric Co.*, 143 Mich. 497, where the place of the accident, the location of the tracks, distances, and other surrounding physical facts are fully stated. Prior to the accident, plaintiff and her husband were driving east on the south side of the street, intending to cross the Third street bridge. At a point about 158 feet west of the bridge Bladecka looked back towards the west, where he could see about 1,000 feet, saw no car approaching, and did not look in that direction again. As he neared the bridge, he saw three rigs approaching on the north side thereof, but did not at first see that a west-bound car was following the rigs. When plaintiff and her husband got within a few feet of the bridge, the rigs going west crossed over to the south side to get out of the way of the west-bound car, and blocked the way in front of their horse and wagon. Mr. Bladecka stopped the horse, and remained in the same position for half a minute or more, where, owing to the nearness of the cop-

ing to the track, a collision was inevitable, if a car attempted to pass. While still standing in this position, one of defendant's east-bound cars, of whose approach plaintiff and her husband were ignorant, collided with their wagon, and caused the injuries for which damages are sought. Defendant's motorman testified:

"When I got within say 250 feet of the bridge, for at this time the wagon was on the track, and that is why I let the car float, and rang the gong so as to give this man a chance to get off, and it appeared to me that the man looked around and drove off the track. There is a little bit of a rise there near the bridge, and he was clear then, clear of the track, you might say, about two feet or three feet. There his wagon would be clear of the car, but he kept on going on a walk then, and got a little closer again to the track. When I got within about 60 feet of him the car was running pretty slow, and I almost came to a stop, but did not stop. What I mean by almost stopping would be probably at the rate of a mile an hour. That is pretty slow. Then this man got clear of the track again and stopped his horse. When I saw that he had stopped —me being almost to a stop and on this little bit of a rise —I put the power back onto the car. That is, I thought I would go by him, but I was not going over at the rate of from about three miles an hour, and then it appeared to me again—you see at that time I was within about, well, I would say 15 or 12 or 15 feet behind his rig—and it appeared to me that this man was going to cross the track ahead of me with his horse, then I shut the power off entirely and set the brake. * * * I presume likely they thought I was going to go a little too far, and these people began to pull back on the lines, and the horse being turned toward the track, and he backed up the wagon, and by the time the car got stopped the car was right opposite the hind wheel of the wagon, and the wagon came with a crash on the walking board of the car, right opposite the vestibule where I was standing. * * *

"*Q.* Now, I understand you that this whole thing occurred, and this damage was done, by their backing the wagon into the car when the car was standing still?

"*A.* Yes, sir."

The court submitted the case to the jury, who found a verdict for plaintiff, and defendant brings the case to this

court for review upon writ of error alleging that the court erred: *First*, in not directing a verdict for defendant; *second*, in the admission of testimony; *third*, in overruling defendant's motion for a new trial.

1. The court instructed the jury that plaintiff was guilty of imputed negligence in getting into the dangerous position which she occupied at the time of the accident, but further charged as follows:

"If you find that the rig in which plaintiff was riding was, at the point claimed by her, near the west end of the Third street bridge, and close to the retaining wall, that her further passage onto and over said bridge was blocked by teams and other traffic thereon, and that the retaining wall prevented her from moving to a safe distance from the railway track, and if your further find that her dangerous position and situation was apparent to the motorman in charge of the defendant's car, for a sufficient length of time to enable said motorman to stop his car and avoid running into plaintiff, and that said motorman, instead of stopping his car, negligently allowed the same to run upon and into said plaintiff while she was in the position aforesaid, and injured her, then the defendant is liable in this case, even though you should find that the plaintiff or her husband were originally negligent in driving into said dangerous position."

Taking the most favorable view which the testimony warrants in plaintiff's behalf, defendant's motorman, having full knowledge of plaintiff's predicament, and with full control of his car, recklessly ran into the wagon. This is not a case of a vehicle traveling parallel with the track and suddenly attempting to cross, and the cases applying to such situations cited by defendant's counsel are not in point. This is the case of a standing vehicle maintaining its position of rest to the full knowledge of the motorman. The case is much stronger for plaintiff upon the facts than was the case of *Daniels* v. *Electric Co.*, supra. We think the charge of the trial judge in this respect was clearly correct. It is not necessary to determine upon this record whether the circuit judge was justified in instructing the jury that plaintiff was guilty of negligence as a matter of law.

2. That the court erred in permitting the witness McKenzie to testify: (*a*) To the distance within which a car could be stopped at the bridge approach, running at various rates of speed, because the questions did not embody the conditions as they existed, nor the size or weight of the car. McKenzie testified that he had had 17 years' experience as motorman and conductor, was familiar with the west approach of the Third street bridge and with the car in question, and that his answers applied to that car. He was informed by a question that it was a dry, sunny day, in the middle of the afternoon. We think there was no error in admitting his testimony. (*b*) That the west end of the bridge approach is frequently congested with travel. If there was any error in admitting this testimony, which we do not determine, it was not so prejudicial as to justify a reversal of the case.

The foregoing are the only questions which require consideration, and the judgment is affirmed.

Grant, C. J., and Montgomery, Ostrander, and Brooke, JJ., concurred.