Argued April 13, affirmed April 27, rehearing denied May 18, 1915.

# MACCHI v. PORTLAND RY., L. & P. CO.*

(148 Pac. 72.)

**Evidence—Opinion Evidence—Competency of Witnesses.**

1.  A witness with four years' railroad experience, and a witness familiar with the speed of street-cars by observing speedometers while riding on motorcycles and in automobiles running at the side of street-cars, are competent to testify to the speed of a car.

**Evidence—Opinion Evidence—Competency of Witnesses.**

2.  A witness qualified to testify on the subject may testify that a street-car was running faster than the ordinary rate, for the statement implies a basis for comparison.

[As to competency of nonexpert witness to testify as to speed of street-car or railroad train, see note in Ann. Cas. 1913A, 187.]

**Appeal and Error—Harmless Error—Erroneous Admission of Evidence.**

3.  Where witnesses competent to testify testified that a street-car was running at from 15 to 18 miles an hour, error in permitting witnesses to testify that the car was· traveling faster than the ordinary rate was not prejudicial.

**Evidence—Opinion Evidence—Subjects of Expert Testimony.**

4.  An experienced motorman may, in response to a hypothetical question describing the type of street-car and the distance covered by it after the application of the emergency brakes, give his opinion as to the speed of the car, because the subject is within the field of expert testimony.

**Trial—Evidence—Admissibility.**

5.  A plaintiff may, as a part of his case in chief, offer evidence in support of his theory, and is not precluded from so doing merely because defendant states something different in his answer.

**Appeal and Error—Harmless Error—Erroneous Admission of Evidence.**

6.  Where, in an action for injuries in a collision with a street-car, the court charged that, at the time of the accident, an ordinance fixed the maximum speed of cars at 25 miles per hour, and that it was not unlawful to run cars within 25 miles per hour, error in admitting a repealed ordinance, limiting the speed to 12 miles per hour, was not prejudicial.

**Street Railroads—Collisions—Care Required of Travelers.**

7.  An instruction, in an action for injuries in a collision with a street-car, that a person could not go on a street-car track without

---

*As to competency of witness to testify to the speed of cars and other vehicles, see notes in 34 L. R. A. (N. S.) 778, 784, 790.

As to duty to look and listen before crossing tracks of an electric road, see notes in 15 L. R. A. (N. S.) 254 and 23 L. R. A. (N. S.) 1224.

REPORTER.

first looking to see whether a car is approaching, but need not stop unless his view is so obstructed that he cannot see any distance, and that, where his view is so obstructed, he must stop and use the degree of care which an ordinary prudent man would use to discover whether a car is approaching, sufficiently submits the issue of the traveler's due care.

### Street Railroads—Collisions—Care Required of Travelers.

8. A traveler approaching a street on which street-cars are operated must look and listen for approaching cars to the extent that a reasonably prudent person would do, and a person keeping a proper lookout and listening uses reasonable care.

### Street Railroads—Collisions—Care Required of Travelers.

9. Where a traveler, approaching a street on which cars are operated, saw an approaching car in such close proximity that he knew, or should have known, that to proceed to cross was liable to result in a collision, and at the time, by using due care, he could have stopped, but made no effort to do so, he was guilty of negligence; but the fact that a person sees a car approaching does not alone show negligence because of an attempt to cross the track, and the quantum of care necessary must be determined by the proximity and speed of the car and the surrounding circumstances.

### Street Railroads—Use of Streets—Rights of Travelers.

10. The right of a street railway company to use a street is not exclusive merely because a traffic ordinance gives cars the right of way as against travelers, and a traveler may proceed to cross in front of an approaching car when he has reasonable ground for believing that he can pass in safety, if both he and those in charge of the car act with due regard to the rights of others.

### Trial—Instructions—Construction.

11. The instructions must, to determine their correctness, be considered as a whole, and if, when so considered, they correctly state the law, they are sufficient.

### Street Railroads—Instructions—Misleading Instructions.

12. Instructions, in an action for injuries in a collision with a street-car, which impose on the traveler the duty of looking and listening, and which defines the circumstances under which he must stop before crossing a street-car track, and which declares that the traveler must conform to the obligations imposed, with the same care that would have been exercised by a reasonably cautious man, were not objectionable as leading the jury to believe that the rule of ordinary care was the sole standard by which to measure the traveler's conduct.

### Street Railroads—Collisions—Injuries to Traveler—Evidence—Admissibility.

13. A traveler, suing a street railroad company for injuries in a collision with a street-car, may explain what he saw and how the situation appeared to him, when he attempted to cross in front of the approaching car, so that the jury may determine whether he in fact used reasonable care.

From Multnomah: THOMAS J. CLEETON, Judge.

Department 1.   Statement by MR. JUSTICE HARRIS.

This is an action by Peter Macchi against the Portland Railway, Light & Power Company, a corporation, for personal injuries resulting from a collision with a street-car in Portland, Oregon.   Grant and Second Streets intersect each other; the former extending east and west and the latter running north and south. The defendant maintains two street-car tracks along Grant Street; one track being used for east-bound and the other for west-bound cars.   Grant Street is 60 feet wide, and Second Street is about 63 feet in width.   On both streets the distance between the property and curb lines is about 12 feet.   On Grant Street it is 36 feet from curb to curb.   The south rail of the track used by cars going east is 11½ feet from the south curb line along Grant Street, and the gauge of the track is 3½ feet, making the location of the north rail 33 feet from the north property line along Grant Street.   Third Street is about 213 feet west of Second Street.   The plaintiff was riding on a motorcycle going south along Second Street from 5 to 8 feet from the west curb line thereof and at the rate of 8 to 10 miles per hour.   He could not see up Grant Street, on account of buildings obstructing the view, until he reached a point between 35 and 50 feet from the street-car track.   He looked when he was about 30 to 35 feet from the track and saw the street-car about midway between Second and Third Streets going east, and, thinking that he had time to cross the track, he proceeded at the rate of speed mentioned with the intention of continuing south along the west side of Second Street; but before reaching the track he looked up the second time, and, discovering that the car was

moving faster than he thought when he first observed it, he turned to the east for the purpose of avoiding the car and with the intention of crossing the track to the south side of Grant Street. The street-car was probably traveling at the rate of 15 miles per hour and possibly faster. The car and the motorcycle collided on Grant and near the east curb line of Second Street, if extended. The complaint charges failure to keep a lookout, neglect to sound a bell, and excessive speed. The defendant appealed from a judgment for the plaintiff.      AFFIRMED.  REHEARING DENIED.

For appellant there was a brief over the names of *Messrs. Griffith, Leiter & Allen* and *Mr. Frank J. Lonergan,* with an oral argument by *Mr. Harrison Allen.*

For respondent there was a brief over the name of *Messrs. Snow & McCamant,* with an oral argument by *Mr. Wallace McCamant.*

MR. JUSTICE HARRIS delivered the opinion of the court.

1-3. The first assignment of error involves the admissibility of evidence. Henry Meeve, Ida Enkeles, Rebecca Barell and Lewis Pitts, witnesses for plaintiff, were permitted, over the objection of the defendant, to testify that the street-car, at or just before the time of the accident, was traveling faster than cars ordinarily ran in the City of Portland; and it is insisted that the admission of such evidence was prejudicial error. A brief statement of the testimony of the witnesses mentioned will enable a better understanding of the possible effect of the questioned evidence. Henry Meeve, with four years of railroad

experience, expressed the opinion that the car was going between 15 and 18 miles per hour. Lewis Pitts, who had become familiar with the speed of cars by observing speedometers while riding on motorcycles and in automobiles when running at the side of street-cars, stated that the rate of speed was about 18 miles per hour, and that the car was going so fast that his attention was thereby attracted. Rebecca Barell expressed her idea of the speed by saying that it was something exceptional and awful fast, and Ida Enkeles described the car as going very fast. Each one of the four witnesses had resided in Portland, had frequently ridden on street-cars in that city, and was familiar with the speed at which cars were ordinarily operated. In addition to the foregoing, it further appeared that George Crawford, who had been a railroad man for 20 years and could estimate speed, testified that the car was traveling not less than 15 miles per hour, and that "it was going pretty fast." Mrs. Alice Westerman could not estimate the speed in miles per hour, but she referred to the car as going awful fast.

Henry Meeve and Lewis Pitts were competent to give an estimate of the rate of speed and did so; and they amplified their testimony by explaining that the car was not only going fast, but was traveling faster than cars were ordinarily operated. Ida Enkeles and Rebecca Barell each stated that the car was running fast, and that the speed was faster than the ordinary rate. Resolved to its final analysis, a description of cars going fast is but a conclusion involving an opinion, and so, too, is the statement that a car is going so many miles per hour, the difference being that the former is less definite than the latter, and yet in both instances the testimony is competent, if the witness

be qualified to speak, the weight thereof being for the jury: 17 Cyc. 107. The declaration that an object, was moving fast implies a basis for comparison, and the statement that the rate of speed was unusual, necessarily involves a comparison. In the case of *Guggenheim* v. *Lake Shore & M. S. Ry. Co.*, 66 Mich. 150 (33 N. W. 161), two witnesses were permitted to compare the speed of a train at the time of an accident with the speed of the same train on other days, and the court remarked:

"It is probable that in the present case the testimony of these witnesses was of little worth, but yet there was no error in receiving it, and it was competent as far as it went."

The testimony here complained of merely constituted one way of saying that the car was going unusually fast. While a somewhat different basis of comparison was used, yet the instant case is analogous in principle to *Blue* v. *Portland Ry., L. & P. Co.*, 60 Or. 122 (117 Pac. 1094). In that case the witness Becker did not disclose what, if any, standard he had in mind when referring to the car as going at a very fast rate; but in the case in hand each of the four witnesses described the speed with relation to the rate at which cars were ordinarily operated, and two of them gave an estimate in miles per hour. Assuming that the standard employed for comparison was too broad and not sufficiently definite, or even conceding that the opinions expressed by the witnesses Ida Enkeles and Rebecca Barell might have been technically objectionable, nevertheless, in the appropriate language of Mr. Justice Moore, as recorded in *Blue* v. *Portland Ry., L. & P. Co.*, 60 Or. 122 (117 Pac. 1094), we conclude that "from the number of witnesses who, without objection, testified with respect to the rate of

speed, as hereinbefore disclosed, we cannot see how the defendant was prejudiced by the admission'' of the sworn declarations that the car was traveling faster than like cars were ordinarily operated in Portland: See, also, *Ball* v. *Mabry,* 91 Ga. 781 (18 S. E. 64); *Johnsen* v. *Oakland, S. L. & H. E. Ry.,* 127 Cal. 608 (60 Pac. 170); *Kansas City, M. & B. Co.* v. *Crocker,* 95 Ala. 412 (11 South. 262); *Louisville, N. A. & C. Ry. Co.* v. *Jones,* 108 Ind. 565 (9 N. E. 476); *Illinois Cent. R. R. Co.* v. *Ashline,* 171 Ill. 313 (49 N. E 521); *Overtoom* v. *Chicago & E. I. R. R. Co.,* 181 Ill. 323 (54 N. E. 898); *Little Rock R. etc.* v. *Green,* 78 Ark. 129 (93 S. W. 752); and *Palmer* v. *Portland Ry., L. & P. Co.,* 56 Or. 262, 265 (108 Pac. 211).

4. The second objection relates also to the admissibility of certain evidence. William Redford, an experienced motorman, answering a hypothetical question which described the type of car and the distance covered after the application of the emergency brakes, declared that in his opinion, based on the conditions assumed in the interrogatory, the car was going about 15 or 17 miles per hour, and that, had the car been moving at the rate of 12 miles per hour, it could have been stopped within 40 feet; and like testimony was given by Alfred Gannon, another experienced motorman. The record discloses that the street-car ran 84 feet from the point of impact before coming to a complete stop. One of the issues was the rate of speed attained. The two witnesses mentioned were qualified to speak, and the questions propounded to them could not well have been answered by anyone who did not possess special knowledge of the subject. The evidence was peculiarly within the field of expert testimony, and no error was committed in receiving the answers: *Velenka* v. *Union Stockyards Co.,* 82 Neb.

511 (118 N. W. 103); *Bladecka* v. *Bay City Traction & El. Co.,* 155 Mich. 253 (118 N. W. 963).

5, 6. The plaintiff alleged that the defendant ran its car in excess of 12 miles per hour, which was the maximum speed allowed by Ordinance No. 13,177, being the franchise which permitted the company to operate its street-cars on Grant Street. Subsequent to the passage of the ordinance mentioned, another ordinance (No. 26,255), was passed, and by the terms of the latter enactment both street-cars and motorcycles were limited to 25 miles per hour. It is claimed that error was committed when Ordinance No. 13,177 was received in evidence, because the earlier enactment was repealed by the later one. The passage of the ordinance relied upon by defendant was denied by the reply. The plaintiff was entitled, as a part of his case in chief, to offer evidence in support of his theory, and was not precluded from asserting what he claimed in his complaint merely because the defendant stated something different in its answer. Furthermore, the ordinance complained of, although received in evidence, could not have prejudiced defendant, because the court charged the jury that, at the time of the accident, Ordinance No. 26,255 was in force, and that, by the terms of that ordinance, the speed of both the motorcycle and the street-car was limited to 25 miles per hour, and that it was not unlawful to run the car within 25 miles per hour. The charge to the jury contains the specific instruction that:

"In other words, the court holds that the ordinance limiting the speed by which vehicles traveling upon the streets mentioned in the ordinance including street-cars—that it was not unlawful to run them at any speed within 25 miles an hour, outside of the re-

stricted district, and this section is conceded to be outside of the restricted district.''

In other words, the court told the jury that he held, as a matter of law, that it was not unlawful to run at any rate of speed within 25 miles per hour. The instructions, as a whole, are predicated on the theory that the rate of speed prohibited by ordinance was 25 miles per hour, and that it was not unlawful to operate cars within the specified maximum.

7. At the request of defendant the court charged the jury that, if the plaintiff drove out upon the street intersection from a point at which his vision of the approaching street-car was obscured or impaired, then it was the duty of the plaintiff to have stopped or checked the speed of his motorcycle before attempting to cross the track until his line of vision was such that he could see whether or not the car was approaching; and if the plaintiff failed to take this precaution, and, on account thereof, the accident occurred, he was guilty of negligence and could not recover; and then the court, over the objection of defendant, added the following:

''This instruction means that a person should not go upon a street-car track without first looking to see whether or not there is a train approaching. He does not necessarily have to stop, unless, of course, his view up or down the track, as the case may be, is obstructed to such an extent he could not see any distance. In that case he will be obliged to use such precaution as an ordinary careful and prudent man would use to ascertain whether or not a car was approaching him, so as to endanger him if he attempted to cross.''

The instructions objected to in effect informed the jury that a person must in any event, and under all circumstances, first look to see whether a train is ap-

proaching before going on a street-car track, but such person is not also required to come to a stop, unless his view is so obstructed that he cannot see any distance; and, if his view is so obstructed that he cannot see any distance, he must stop, and "in that case" is obliged to use the degree of care which an ordinarily prudent man would have used to discern whether a car was approaching.

8. And again at the instance of defendant the jury was told that it was the duty of plaintiff, while driving his motorcycle, not to have attempted to cross or go upon the track of the defendant, without keeping a proper lookout and listening for cars which might be approaching along the track, and if plaintiff failed to take the precaution, and by reason thereof did not see or hear the approaching car until the same was in such close proximity that a collision was inevitable, then the plaintiff was guilty of negligence and could not recover. The defendant complains because of the following addition to the instruction:

"This proper precaution, as he court has said, is the use of reasonable care, such as an ordinarily prudent and careful man would have used or should have used, under the circumstances."

The requested portion of the instruction told the jury that the plaintiff was obliged to keep a proper lookout and listen. It will be observed that the extent of the duty, as described in the requested instruction, was limited by the term "proper." The portion objected to may be construed to mean that the plaintiff was bound actually to look and listen and to do so to the extent that a reasonably prudent person would have done; or it may be considered to mean that, if a person keeps a proper lookout and listens, it is in fact

the use of reasonable care.   No fair construction can be conceived of which could have injured defendant in the slightest.

Another assignment of error relates to the giving of a requested instruction and addition thereto.

9, 10. The jury was advised that if the plaintiff drove the motorcycle upon the street intersection when he saw the car approaching in such close proximity that he knew or, by the exercise of due care for his own safety should have known, that to proceed further was liable to bring about a collision, or that he would run the risk of striking against the street-car, and if, at the time he saw the car approaching, he was at such a distance from the track that, by the exercise of due care, he could have stopped and avoided the collision, and if he made no effort to stop, and his failure to do so was the proximate cause of the injuries, then he was guilty of negligence. The language complained of reads thus:

"That means to say that he must have used due care, or must have used ordinary care and caution in the operation of his car at the place and time when he first beheld the car coming down the track toward the crossing. He must have done what an ordinarily prudent and cautious man would have done at that time under all the circumstances of the case. If he did not do that, he would, of course, be guilty of negligence."

If the plaintiff saw the car in such close proximity that he knew or should have known that to proceed further was liable to result in a collision, and if at the time, by using due care, he could have stopped, but made no effort to do so, he would have failed to measure up to the obligation imposed by the law. The fact that a person sees a street-car approaching does not

76 Or.—15

alone and of itself spell negligence, if an attempt is
made to cross the track; but the quantum of care
necessary is to be determined by the proximity and
speed of the car, plus the surrounding circumstances.
The right of the defendant to use the street was not
exclusive, even if it be assumed that, by reason of the
traffic ordinance, the car had the right of way as
against the plaintiff. The driver of a vehicle can
proceed at a highway crossing to go over a street rail-
way track in the face of an approaching car, when he
has reasonable ground for believing that he can pass
in safety, if both he and those in charge of the car act
with due regard to the rights of others. Whether
there was reasonable ground to believe that the cross-
ing could be safely made was a question of fact for
the jury. The ultimate inquiry is whether the plain-
tiff exercised due care. If he did not have reasonable
ground to believe that he could safely cross the track,
then he was guilty of negligence. The duty of exer-
cising proper care was at all times imposed upon
plaintiff, and the jury was not told that his obligation
was different: *Donohoe* v. *Portland Ry., L & P. Co.,*
56 Or. 58 (107 Pac. 964); *Smith* v. *Minneapolis St. Ry.
Co.,* 95 Minn. 254 (104 N. W. 16); *Davis* v. *Railroad,*
68 N. H. 247 (44 Atl. 388); *Omaha Street Ry. Co.* v.
*Mathiesen,* 73 Neb. 820 (103 N. W. 666).

11, 12. It is argued that the vitality of the requested
portions of the charge was sapped by giving the
quoted additions, and that thereby the matter was set
at large, leaving the rule of ordinary care as the sole
standard by which to measure the conduct of plaintiff.
The instructions must be viewed as a whole, and, when
so considered, they did not have the effect asserted
by the defendant. The jury was plainly and repeat-
edly told that the law imposed the duty of looking and

listening and under what circumstances a person is obliged to stop before crossing; and it is quite unreasonable to believe that the jury misunderstood or was misled or that the instructions complained of nullified the ones requested and given. The duties imposed upon the plaintiff were specifically defined to the jury, as directed by the rule stated in *Edlefson* v. *Portland Ry., L. & P. Co.,* 69 Or. 18 (136 Pac. 832). The jury was also informed that the plaintiff was required to meet the defined obligations with the same care and diligence that would have been exercised by a reasonably cautious man; and the triers of the facts were not instructed that less or different caution would satisfy the law.

13. After testifying that, when about 30 or 35 feet from the track, he first saw the approaching car, and that it was at that moment at about the middle of the block between Second and Third Streets, the plaintiff, over objection, answered that: "I thought I had plenty of time to make the crossing." The witness proceeded to explain that, when he took a second look, he discovered that the car was approaching faster than he thought it was when he first observed it, and that he therefore turned east on Grant Street to get out of the car's way; and then, over objection, the plaintiff testified that: "I thought I had time enough to get on the right side of Grant Street out of the car's way." The fact to be decided by the jury was whether plaintiff employed reasonable care. Like testimony has been held admissible in aid of the inquiry.

"The real question, however, is what a reasonably prudent and cautious man, exercising his faculties for his protection, would have done under all the circumstances, and not what the plaintiff thought, although

the result of his deliberate judgment then formed may throw some light upon the subject: *McCrohan* v. *Davison,* 187 Mass. 466 (73 N. E. 553); *Jeddrey* v. *Boston & N. St. Ry.,* 198 Mass. 232 (84 N. E. 316).

The plaintiff was entitled to explain what he saw and how the situation appeared to him, and then it was for the jury to say whether, under all the evidence, the plaintiff did in fact use reasonable care.

Having considered all the assignments of error discussed in the brief filed by defendant and finding no prejudicial error, the judgment is affirmed.

AFFIRMED.    REHEARING DENIED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE BURNETT and MR. JUSTICE MCBRIDE concur.