[Argued November 14; decided December 11, 1893.]

## AH DOON v. SMITH.

[ S. C. 34 Pac. Rep. 1093. ]

1. ILLEGAL CONTRACT — PLEADING — PROOF — PUBLIC POLICY.— It is an established rule of pleading that the illegality of a contract sued on must be pleaded in order to be available as a defense; but if it should appear from the testimony of plaintiff's witnesses that the contract in question is illegal or immoral, the court ought to dismiss the proceeding of it own motion on grounds of public policy, even though no such defense has been pleaded.  *Buchtel* v. *Evans*, 21 Or. 309, cited and approved.     .      .      .                  .                  .

2. WHAT IS A WITNESS'S TESTIMONY.— The testimony of a witness is not only his evidence in chief, but is that evidence as explained, modified, limited, or contradicted by the cross-examination; both the direct and cross-examination must be treated as evidence given on behalf of the party calling the witness.                        .

3. SCOPE OF CROSS-EXAMINATION — CODE, ∂ 873.— Under the terms of section 873 of Hill's Code, a party may not cross-examine a witness on any matters other than those stated in the direct examination, or properly connected therewith; but within these limits the cross-examination should be liberal, and may properly extend to other matters that tend to limit, explain, or modify the facts stated on direct examination, provided they are directly connected therewith.

4. ILLEGALITY OF CONTRACT SHOWN BY CROSS-EXAMINATION.— Where plaintiff, in an action on contract, discloses on his examination in chief only so much of the transaction as leaves an inference of the contract's legality, it is proper for defendant to bring out on cross-examination the remaining facts and circumstances under which the contract arose, and which show its illegality.

APPEAL from Crook: W. L. BRADSHAW, Judge.

This is an action by Ah Doon against C. S. Smith to recover the sum of seven hundred and forty dollars, alleged to have been loaned by plaintiff to the defendant, and also the sum of one hundred and forty-five dollars, alleged to have been received by the defendant for the use and benefit of the plaintiff. The complaint alleges, in substance, that on or about the sixteenth day of October, eighteen hundred and ninety-two, the plaintiff, at the instance and request of defendant, furnished, loaned, and delivered to him the sum of seven hundred and forty dollars in cash, which the defendant promised and agreed to repay, but has neglected and failed so to do; and, for a further and separate cause of action, that on the same day the defendant received and applied to his own use and benefit money belonging to the plaintiff in the further sum of one hundred and forty-five dollars, which he has refused and neglected to pay to the plaintiff. The answer specifically denies all the material allegations of the complaint.

At the trial the plaintiff, testifying in his own behalf, stated in general terms, that at the time alleged he furnished and delivered to the defendant seven hundred and forty dollars in coin, and that defendant took and appropriated to his own use one hundred and forty-five dollars in money belonging to the plaintiff, and that neither of said amounts, or any part thereof, had ever been repaid to him. Upon the cross-examination of plaintiff and his witnesses, the defendant was permitted to show by them, over plaintiff's objection and exception, that at the time the money was delivered to defendant by plaintiff, and as part of the same transaction, they were engaged in unlawful gaming; that the money was to be used by defendant in the game, and was so used, and that the one hundred and forty-five dollars taken by defendant was money lost by him in such game and taken

from the gambling table while the game was in progress. At the close of the testimony for plaintiff, the defendant moved for a dismissal of the action on the ground that the contract sued upon was against public policy and good morals, and one which a court of justice should not enforce. This motion was sustained, and plaintiff appeals.                                        AFFIRMED.

*Mr. J. F. Moore,* for Appellant.

*Mr. Geo. W. Barnes ( Mr. M. E. Brink* on the brief), for Respondent.

Opinion by MR. JUSTICE BEAN.

1. Plaintiff did not, at the hearing, controvert the position taken by defendant that if the money sued for was delivered to him to be used in gaming, under the circumstances disclosed, it cannot be recovered in a court of justice, (*McKinnell* v. *Robinson,* 3 Mees. & W. 434; *Badgley* v. *Beale,* 3 Watt, 263,) but he insists that such a defense is new matter, and must be pleaded before it can be proved. As a rule of pleading this is undoubtedly correct. A defendant who has not pleaded the illegality of the contract sued on has no right to offer evidence of such illegality, and it is said he cannot avail himself of it when disclosed by the plaintiff's case if the court does not refuse to entertain the action: *Cardozo* v. *Swift,* 113 Mass. 250. But no waiver by the defendant, or neglect to plead such a defense, can oblige the court to entertain an action founded upon an illegal or immoral contract, when such illegality appears in the case. If it does so appear, the court may, and on principles of public policy and good morals ought to, dismiss the action and refuse to lend its aid to enforce such a contract. The rule is the same whether the illegality of the contract appears

from the plaintiff's case or is set up by way of defense: *Buchtel* v. *Evans*, 21 Or. 309, 28 Pac. Rep. 67. If the illegality appears from the plaintiff's own showing, the court will say to him, 'You have no right to be heard in a court of justice,' but if it does not so appear, it cannot be shown by the defendant unless pleaded. Defenses of this nature are sustained by the courts on general principles of public policy and good morals, and not to enable a defendant to redress any wrong he may have suffered while engaged in such unlawful practices. As was said by Lord MANSFIELD: "The objection that a contract is immoral or illegal as between plaintiff and defendant, sounds, at all times, very ill in the mouth of the defendant. It is not for his sake, however, that the objection is ever allowed, but it is founded in general principles of policy, which the defendant has the advantage of, contrary to real justice as between him and the plaintiff; by accident, if I may so say. The principle of public policy is this, '*ex dolo malo non oritur actio.*' No court will lend its aid to a man who founds his cause of action upon an illegal or an immoral act. If from the plaintiff's own statement, or otherwise, the cause of action appears to arise *ex turpi causa,* or the transgression of a positive law of this country, then the court says he has no right to be assisted. It is upon that ground the court goes, not for the sake of the defendant, but because it will not lend its aid to such a plaintiff": *Holman* v. *Johnson,* 1. Cowp. 343.

The question in this case, then, is as to whether the illegality of the pretended contract appeared from plaintiff's own case; and its solution must depend upon the fact of the evidence given by himself and his witnesses on that subject having been elicited by proper cross-examination, because all testimony thus elicited constitutes a part of the evidence in chief, and both the direct

and cross-examination must be treated as evidence given on the part of the party calling the witness. The testimony of a witness is not alone his evidence as given in chief, but it is the combined result of that given in chief as explained, modified, or contradicted by the cross-examination: *Campau* v. *Dewey*, 9 Mich. 417; *Wilson* v. *Wagar*, 26 Mich. 452. If, therefore, the cross-examination in this case was proper the illegality of the contract appeared from plaintiff's own case, and the motion to dismiss was properly sustained, although no such defense was pleaded in the answer.

There is much conflict in the books as to the proper limit of a cross-examination, but it is unnecessary for us to enter upon an examination of the authorities, or to attempt to ascertain the rule therefrom, because the question is settled by section 873 of Hill's Code, which provides that, "The adverse party may cross-examine the witness as to any matter stated on his direct examination or connected therewith, and in so doing may put to him leading questions, but if he examine him as to other matters such examination is to be subject to the same rules as the direct examination." Under this statute, and the rule there provided, a party has no right to cross-examine a witness except as to facts and circumstances stated on his direct examination or connected therewith; but within this limitation great latitude should be allowed in conducting the examination. It should not be limited to the exact facts stated on the direct examination, but may extend to other matters which tend to limit, explain, or qualify them, or to rebut or modify any inference resulting therefrom, provided they are directly connected with the matter stated in the direct examination. It is true the party against whom a witness is called cannot, on cross-examination, go into an independent or affirmative case on his part,

but must confine his examination to such facts connected with the direct examination as go to counteract so much of the case of his adversary as the direct examination tends to prove, but the fact that evidence called forth by a legitimate cross-examination also tends to sustain some defense affords no reason why it should be excluded. A party will not be permitted to glean out certain facts from his witness, which, without explanation, would give a false coloring to the matter about which he testifies, and then save his witness from the sifting process of a cross-examination by which the real transaction could be shown.

4. When a witness is called and examined concerning any particular matter, the law imposes the obligation upon him to state the whole truth concerning such matter within his knowledge, and a direct examination, if perfectly fair, would generally disclose all the witness knows concerning the matter about which he is testifying. But because the party calling him may so skillfully and adroitly conduct the examination in chief as to disclose only those facts which are in his favor, and conceal those which are against him, the law has given to the adverse party the right of cross-examination for the purpose of bringing out the facts thus concealed. Now, in this case, when the plaintiff was called and examined in chief concerning the alleged loan, the law imposed upon him the obligation to state the whole truth, and if he had done so he would have disclosed the fact that it was not a legitimate loan, but that he and the defendant were, at the time, engaged in an unlawful game; that he furnished defendant money to enable him to engage in it; that defendant lost the money so furnished, and plaintiff redelivered it to him, and this continued until the aggregate amount of such pretended loan reached the sum of seven hundred and forty dollars; and that the

remaining one hundred and forty-five dollars sued for was money thus loaned and lost, and which defendant took from the gambling table. He would have thus disclosed and set forth facts upon which no court of justice would grant him relief. But having on his examination in chief disclosed only so much of the transaction out of which the pretended contract arose as was favorable to him, and which left the inference that it was legitimate and legal, and, having concealed the facts which were against him, it was within the limits of a strict cross-examination for the defendant to bring out the remaining facts concerning the pretended loan and the circumstances under which it was made. And while the objection that his contract with the plaintiff is illegal and immoral, sounds very ill in the mouth of the defendant, it is not for his sake the objection is allowed, but upon principles of public policy, which he "has the advantage of contrary to real justice as between him and the plaintiff." So that, although there appears to be some equity in favor of the plaintiff and against the defendant, it cannot avail him in this case. We hold, therefore, that the motion to dismiss was properly sustained, and the judgment must be affirmed.

AFFIRMED.