Argued October 18, decided October 24, 1911.

# BLUE v. PORTLAND RY. LIGHT & POWER CO.

[117 Pac. 1094.]

WITNESSES—CROSS-EXAMINATION—SCOPE.

1. Under Section 860, L. O. L., providing that an adverse party may examine a witness as to any matter stated in his direct examination or connected therewith, a fact which may be inferred from the direct examination of a witness is connected with the testimony in chief, so as to be a proper matter of cross-examination. and hence where, in an action by a passenger for personal injuries, the person in charge of the car as motorman at the time of the accident testified in chief that he had been in the employ of the street car company for more than two years as conductor, but was not interrogated as to his qualifications as motorman, the inference might have been drawn by the jury that he was competent to manage the instrumentalities under his control, which rendered proper cross-examination as to his experience in managing the car.

EVIDENCE—EXPERT—EXPERIENCE NECESSARY TO QUALIFY.

2. Where, in an action for an injury from negligent handling of defendant's street car, a passenger testified that she had traveled over that line twice a day for two months previous thereto, and knew the usual speed at which cars were run thereon, and that she had ridden on street cars and railroads in other cities and noted the speed at which they were safely operated, she is qualified to testify as to whether, at the time of the accident, the car was running at an unusual speed.

APPEAL AND ERROR—REVIEW—HARMLESS ERROR.

3. In an action for an injury from the negligent handling of defendant's street car, allowing a witness to testify that the speed of the car at the time of the accident was unusual, even if it does not appear that he knew what was the usual speed, is not prejudicial, where a number of other witnesses have previously testified similarly without objection.

WITNESSES—CROSS-EXAMINATION—PROPRIETY OF QUESTION.

4. Where, in an action against a street railway company, a former employe, offered by plaintiff as an expert, testifies on cross-examination that he was not discharged by defendant, and defendant's superintendent testifies in impeachment that he was discharged, a question on such superintendent's cross-examination as to how long such employe worked for the company is so intimately connected with the matter stated in direct examination as to be proper.

TRIAL—INSTRUCTIONS—CURING ERROR.

5. An instruction, in an action against a street car company, that it was liable for any injury resulting from a conductor's negligence, or from his wrongful act in allowing the car to be run without a sufficient number of persons in charge, or in running it himself without sufficient assistance, is not improper, as taking from the jury the question whether the absence of some of the operatives of the car was negligent, 'where the instructions immediately following expressly leave such determination to them.

From Multnomah: CALVIN U. GANTENBEIN, Judge.

Statement by MR. JUSTICE MOORE.

This is an action by Ada E. Blue against the Portland Railway, Light & Power Company, to recover damages for a personal injury. The complaint alleges, in substance, that the defendant is a corporation, and engaged in operating street cars by electricity in Portland; that on May 31, 1909, the plaintiff was a passenger in one of its cars going west on Belmont street, which car was negligently managed by only one servant, when more employes were required for that purpose; that the person who was then acting as motorman was incompetent, and permitted the car to run at an unlawful and dangerous rate of speed, which velocity was not diminished as curves in the track were approached; that no conductor was in charge of the car, and plaintiff was unable to attract the attention of the person then acting as motorman, and, desiring to pay her fare and to alight at the next cross street, she rose from the seat which she occupied, and started forward to notify the defendant's servant; that as she was making the journey the speed of the car was increased, and rushing over a sharp curve in the track the car suddenly lurched, throwing her to and dragging her along the street, inflicting upon her a scalp wound, laying bare and fracturing her skull, dislocating and injuring her shoulder, collar bone, and arm, fracturing her lower jaw, causing it to protrude, impairing the muscles of her mouth and throat, hurting her spine and kidneys, lacerating her head, limbs, and body, causing partial paralysis, permanently disfiguring and incapaciating her from performing any labor, and causing her to suffer great physical pain and mental anguish, which infirmities will continue during her life, all to her injury and damage in the sum of $100,000, for which judgment was demanded. The answer denied the material allegations of the com-

plaint, and alleged that the injury complained of was
caused by plaintiff's contributory negligence setting forth
the particulars thereof. The allegations of new matter
in the answer were denied in the reply, and, the cause
having been tried, plaintiff secured a verdict and judg-
ment for $22,500, and the defendant appeals.

AFFIRMED.

For appellant there was a brief over the names of
*Messrs, Wilbur & Spencer,* and *Mr. Arthur M. Dibble,*
with an oral argument by *Mr. Schuyler C. Spencer.*

For respondent there was a brief over the names of
*Messrs. Graham, Cleeton & Davis, Mr. Grant B. Dimick
and Mr. Arthur I. Moulton,* with oral arguments by *Mr.
Thomas J. Cleeton* and *Mr. Moulton.*

MR. JUSTICE MOORE delivered the opinion of the court.

Before considering the exceptions relied upon to secure
a reversal of the judgment, a brief description of a section
of the defendant's railway near and at the place where the
injury occurred, of the management of the car at that
time, and of plaintiff's movements immediately prior
thereto will be given. A double track extends from the
Willamette River easterly along Belmont street to Sixtieth
street, at Mt. Tabor, which place appears to be a terminus
of that line of railway. Twenty-one blocks west of this
eastern limit, at Thirty-Ninth street, the tracks curve
slightly to the south, at which place the downgrade
towards the river is $1\frac{1}{2}$ per cent. The motorman who
was operating the car going east on the last trip prior to
the injury was obliged to leave the car at Thirty-Third
street, in order to attend a call of nature. S. M. Fleener,
the conductor who had charge of the car, thereupon acted
as motorman going to Sixtieth street, and when he was
returning on the north track plaintiff became a passenger.
She desired to alight at Thirty-ninth street, which crosses

Belmont at right angles, but being unable to signal to Fleener, she arose, and started forward to notify him of her wishes.    As she was communicating her request, standing within the car, with her left hand upon the door jamb, as her witnesses declared, the car in its rapid flight struck the curve in the track, causing it suddenly to lurch, throwing several passengers from their seats to the floor, and causing the plaintiff to fall into the vestibule and off the car on the north side of the track, along which she was dragged about 60 feet, striking an obstruction and inflicting the injuries alleged to have been sustained.

1. It will be remembered that one of the grounds of negligence alleged in the complaint is the incompetency of the defendant's servant, who was acting as motorman and undertaking to manage the car at the time of the injury. This averment was denied in the answer, but no direct testimony was offered by the plaintiff upon that issue, when she rested in chief, after having submitted her evidence.    The defendant's counsel thereupon requested the court to withdraw all further inquiry respecting such alleged incompetency, on the ground of a failure of proof; but the application was denied, and an exception allowed.

Fleener, as defendant's witness, testified that he had been in its employ two years and seven months as a conductor, detailed the circumstances of the injury as alleged in the answer, but was not interrogated, in chief, respecting his experience or qualifications as a motorman of electric cars.    On cross-examination this witness, over objection and exception, admitted that he was never employed by the defendant as a motorman, in which branch of the service he had not managed an electric car for any length of time; that he had occasionally taken to the barn a car, when a motorman accompanied him, and showed him how to·manage it; that this constituted all the experience he had ever had in that line of work; and

that he had never acted as a motorman at all prior to the injury.

It is argued that, as Fleener had not been interrogated in his direct examination in relation to his experience as a motorman, the testimony which he was compelled to give on cross-examination on that subject was inadmissible, and, such being the case the court, in refusing to take from the consideration of the jury the question of his qualification to manage a car, committed an error which was not thereafter remedied by any legal proof to substantiate the issue.

The question of the admissibility of the testimony so received on cross-examination will be first considered. An adverse party may cross-examine a witness as to any matter stated in his direct examination or connected therewith. Section 860, L. O. L. In construing this clause of the statute, it has been held that, if from the direct examination of a witness the jury could draw an inference, such deduction of fact thereby becomes connected with the testimony in chief, rendering it a legitimate matter of cross-examination. *Ah Doon* v. *Smith*, 25 Or. 89 (34 Pac. 1093). Fleener having testified in chief that he had been in defendant's employ more than two years as a conductor, and at the time of the accident was operating the car as motorman, it might be reasonably inferred that he was competent properly to manage the instrumentalities in his charge, and such being the case the cross-examination was proper, and within the discretion of the trial court. If, therefore, any mistake was committed in denying the request to eliminate the issue of the incompetency of Fleener to operate the car as a motorman, the fault was corrected in his cross-examination, from which the jury were authorized to determine the question.

2. It is maintained that errors were committed in permitting the witnesses Rudolph Becker and Addie E.

Dickey, who were passengers with plaintiff when she was injured, to testify that the speed of the car was unusual. From the bill of exceptions it appears that before these witnesses were called, other testimony on that subject had been given without objection. Thus Dr. Edward M. Sharp, a passenger on the car at the time of the accident, testified that the speed seemed to be excessive. Wenzen Fritsche, an architect whose office was then in the second story of a building at the corner of Thirty-ninth and Belmont streets, deposed that he was standing at a window and observed the approach of the car, which he saw coming from Mt. Tabor at a very high speed, and swaying from one side to the other, making an unusual noise, and he feared it would jump the track at the corner. Frederick Powell, another passenger, stated that east of the place where the injury occurred there was a piece of new smooth track over which the car ran swiftly, striking the curve without any perceptible slacking of speed, saying:

"Well, the motion of the car was such that I realized that at the speed we were going that something was going to happen at that curve, because apparently the man [Fleener] was not paying any attention to his duties, approaching the curve without checking the speed of the car at all, and I was nervous and expecting something to happen, although I did not see the girl fall; but I was afraid that the car was going to jump the track at that curve at the speed we were going, because the permanent track ended right there at the east side of Thirty-ninth street; that is, went onto the old track, which has been temporarily connected with the heavy rails as it crossed Thirty-ninth."

After having testified that he had been accustomed to ride on street cars in cities, this witness was asked:

"Well, what do you think the speed of this car was at this time, per hour?"

He answered: "Of course, being in the car, it is a little more difficult to judge than it would be if you stood

outside and had a chance to watch the car go by; but I should judge it was going considerably faster than the average speed of a car." Q. How many miles an hour would you say? A. Oh, it was going more likely between 15 and 20 miles than 12 miles, right there on that smooth piece of track." Mary A. Weygandt stated upon oath that the car must have been running very fast when it struck the curve, for one of the passengers was hurled across the aisle. Delilah Cason testified that at Thirty-ninth street she was thrown out of her seat, and across the aisle, on her hands and knees, and that the car appeared to be going very fast. Rudolph Becker was thereupon called as plaintiff's witness, and testified that at the time of the accident he was driving a wagon at Thirty-ninth street, and saw the car coming at a very fast rate of speed, and swaying from side to side as it rounded the curve; was asked, "Now, what can you say as to whether or not this car, on this particular morning, at the time of the accident, was running at the usual rate of speed?" An objection having been interposed to the question, the inquiry was changed as follows, "Well, was it running at an unusual rate of speed for that line?" Over objection and exception he replied, "Yes, sir." Addie E. Dickey, a passenger on the car, as plaintiff's witness, testified that she had traveled over that line twice a day for about two months prior to the accident; that she had ridden on railroad trains and street cars in other cities, and noted the speed at which they were severally operated, and that she knew the usual rate of speed of defendant's cars over this line at the place of the accident; was interrogated as follows: "I will ask you this: Whether or not this car was, at the time of the accident and at the point of the accident, and beyond, east of the point of the accident, running at a usual or unusual rate of speed?" Over objection and exception, she answered, "I consider it a very unusual rate of speed." The testimony of the last witness shows

that the person giving it was competent to express an opinion on the subject to which her attention was called. She was an experienced traveler, had noted the usual speed of the car over the particular line and at the place of the accident for two months prior thereto, and observed the rate of speed just prior to the injury. She could make the comparison, and in permitting her to do so no error was committed.

It will be conceded that if a witness could have stated upon oath that he knew the ordinary rate of speed of a car at a stated place to be, say 10 miles an hour, and that on a particular occasion the car ran 20 miles an hour, the jury could readily have deduced the conclusion that the speed was unusual. Unless a witness has been a locomotive engineer, or a person whose employment has required an observation of the movement of trains or electric cars according to the schedule prescribed in a time-table, it would be difficult for him to say with any degree of certainty that at a given time and place a certain number of miles had been attained in operating cars. If no other persons than those suggested were competent to express an opinion on this subject, it would necessarily follow that in nearly every inquiry where an excessive and a dangerous rate of speed was alleged as a ground of negligence, a failure of proof would probably result, for it is safe to say that the interest of most employes is, and rightfully should be, with the corporation which secures their services; and, while it will not be presumed or inferred that false testimony would be given, evidence might be suppressed, questions evaded, or answers returned that the rate of speed had not been noted, or, if observed, had been forgotten. In order to meet the requirements of justice, a witness who is not such an expert as has been referred to is permitted to express an opinion as to the condition and appearance of persons and things, and, under such circumstances as were detailed

Sig. 5

by Addie E. Dickey, may compare the rate of speed, and say that it was unusual.

3. Becker testified that the car was going at a very fast rate, and swaying from side to side, as it was rounding the curve. It does not appear, however, that he knew what was the usual speed at the place of the accident, or on that line of railway. The pleadings admit that an ordinance of Portland, in force when the injury occurred, provided that the rate of speed should not exceed 12 miles per hour within the limits of the city. It is possible that in testifying that the speed of the car at the time of the accident was unusual, Becker was comparing the rate with that so limited, but, however this may be, the bill of exceptions is silent on that subject. From the number of witnesses who, without objection, testified with respect to the rate of speed, as hereinbefore disclosed, we cannot see how the defendant was prejudiced by the admission of Becker's sworn declaration.

4. David Fisher, as plaintiff's witness, having testified that he had been employed by the defendant as a motorman, and in that capacity had operated its cars on the line at Portland Heights, answered a hypothetical question as to the distance in which a car could have been stopped, if properly managed at the time and place of the injury, was asked on cross-examination:

"Were you not discharged last summer for certain reasons by the company?"

And he replied:

"No, sir; I was not discharged."

In order to impeach such declaration, Fred Cooper, the defendant's superintendent of transportation, testified as follows:

"Do you know David Fisher, who formerly worked for you and ran on the Portland Heights?"
A. "Yes, sir."

Q. "I will ask you to state whether or not Mr. David Fisher was discharged by this company last summer, or when he left?"

A. "He was; yes."

On cross-examination Cooper was interrogated, and, over objection and exception, testified as follows:

"How long had he (referring to Fisher) worked for you?"

A. "It was a little over two years.  I haven't got the exact date."

Q. "As a motorman?"

A. "As a motorman."

Q. "Worked on the Heights' cars?"

A. "Yes."

An examination of the testimony given by Cooper in chief, when compared with his cross-examination, shows that the questions so objected to either related to the matter stated in his direct examination, or were so intimately connected therewith, that no error was committed in requiring this witness to answer the questions so propounded.

5. An exception having been taken to the following part of the charge, it is insisted that an error was committed in instructing the jury as follows:

"The conductor of a street car, so far as the relation of the company owning and operating the car with its passengers is concerned, represents the company, and if an injury results from the negligence of the conductor, or from his wrongful act in permitting the car to be run without sufficient number of persons in charge of it, or in attempting to run it himself, without sufficient assistance, under the circumstances, the company is liable in damages for the injury sustained, unless the party injured is guilty of contributory negligence, as defined to you."

Instructions which are within the issues and not essentially inappropriate should be viewed in connec-

tion with the entire charge, or with such parts of it as explain or modify any ambiguous portion, in order to determine whether or not an erroneous expression has been given to the law applicable to the facts involved. In the light of this rule, attention is called to the instruction immediately following that so complained of, to wit:

"It is the duty of a street car company to provide, and keep in charge of its cars, a sufficient number of competent persons to safely and properly operate the cars, under the particular circumstances of the case. I will qualify that 'with a sufficient number of competent persons,' and will say that I do not wish to imply that there must be two or more, as, if, in your judgment, one person is sufficient for the car, that would preclude the idea of negligence on the part of the defendant. The way this is worded it might appear that it was absolutely necessary that they should have two. That is for you to determine, under the particular circumstances of the case, as to whether it was negligence to have one, and not more than that."

In another part of the charge, the court said:

"I will instruct you that the fact that there was not both a conductor and a motorman on defendant's car on which the plaintiff was a passenger does not of itself establish negligence on the part of the defendant such as would render it liable in this action, but you may take such fact into consideration in connection with all the facts and circumstances in the case." "It is for you to say from all the evidence whether the defendant was negligent under the circumstances in failing to have a conductor, or two men, upon its car at the time this accident happened, and, if you believe that the defendant was negligent in this respect, but find that it was not the proximate cause of the accident, or that the plaintiff contributed to the accident by reason of her own negligence and want of care, then you cannot find the defendant liable for failing to have two men in charge of the car."

From the language thus employed, it is manifest that the measure of duty imposed upon and exacted from the defendant was commensurate with the degree of danger reasonably to be apprehended. Considering in *pari materia* the parts of the charge quoted, no error was committed in giving the instructions complained of.

Other exceptions are relied upon, but, believing them immarterial, and that no substantial error was committed, it follows that the judgment should be affirmed, and it is so ordered.          AFFIRMED.