Submitted on briefs September 25, reversed and remanded October 2, 1923.

## MARSHALL *v.* BROWN.

(218 Pac. 923.)

**Trial—Overruling of Indefinite Motion to Strike Out Testimony as Irresponsive Held not Erroneous Where Part of It was Responsive.**

1. Overruling of motions to strike out plaintiff's testimony, on ground his answer was not responsive to question, *held* not error where the motions generally included all of the answer, some of which was responsive.

**Malicious Prosecution—Evidence of Value of Animal Sold by Accused Bailee Held Competent on Question of Intent.**

2. In an action for malicious prosecution on a charge of larceny by bailee for selling to another, with right to repurchase, a mare on which defendant held a chattel mortgage, evidence by plaintiff, the mortgagor, as to value of mare *held* competent as throwing light on plaintiff's intent.

**Malicious Prosecution—Good Faith in Instituting Prosecution Held for Jury.**

3. Whether the prosecution of plaintiff for selling a mare on which defendant held a chattel mortgage was instituted in good

---

2. Right of one, in action for malicious prosecution, to testify as to his intent, see note in 23 L. R. A. (N. S.) 392.

3. Whether probable cause is question for court or jury in action for malicious prosecution, see note in L. R. A. 1915D, 1.

faith *held* a question for jury, it appearing that plaintiff was discharged, and that defendant did not make a full statement of all the facts to the public prosecutor.

**Malicious Prosecution—Discharge Evidence of Lack of Probable Cause.**

4. The discharge of accused by the committing magistrate is some evidence of lack of probable cause.

**Malicious Prosecution—Witnesses—Cross-examination of Character Witnesses of Party Alleging Injury to Reputation Held Erroneously Restricted to Reputation for Honesty.**

5. Where plaintiff in an action for malicious prosecution alleged injury to his reputation, but confined the direct examination of his witness to general reputation for financial honesty, exclusion, on cross-examination, of evidence that plaintiff was cohabiting with a woman not his wife, *held* error, since the matter sought to be elicited was connected with the statement in direct examination that his reputation with the people he dealt with was good, within Section 860, Or. L., and was valuable at least in mitigation of damages.

From Multnomah: JOHN McCOURT, Judge.

In Banc.

REVERSED AND REMANDED.

For appellant there was a brief over the name of *Messrs. Joseph, Haney & Littlefield.*

For respondent there was a brief over the names of *Mr. Isham N. Smith* and *Mr. Clarence H. Gilbert.*

BURNETT, J.—The plaintiff had given to the defendant a chattel mortgage on a mare used for racing purposes and afterward put her in possession of a third party, giving to him the following writing:

---

4. Acquittal, discharge or discontinuance, as evidence of want of probable cause in action for malicious prosecution, see notes in 7 Ann. Cas. 482; 16 Ann. Cas. 1107; Ann. Cas. 1913A, 926; 24 A. L. R. 261; 64 L. R. A. 475.

5. Refusal to allow cross-examination on relevant matters covered by the examination in chief as ground for reversal, see note in 25 L. R. A. (N. S.) 683.

Admissibility of evidence of character in action for malicious prosecution, see notes in 4 Ann. Cas. 839; Ann. Cas. 1916D, 1167; 14 L. R. A. (N. S.) 755.

"For value received in cash of C. E. McKillopp in the sum of $105.00, I agree to give and deliver to him to keep and to hold the black mare, 'Minnie H.' with the privilege of buying her back within the next thirty days for $115.00 and feed bill.

                                   "J. E. MARSHALL."

Under these circumstances the defendant caused the arrest of the plaintiff on a charge of larceny by bailee. Upon his discharge by the magistrate before whom the hearing was had, the plaintiff commenced this action for malicious prosecution. The claim for damages is thus asserted in his complaint:

"That by reason of the premises plaintiff suffered great personal injury, expense and inconvenience, humiliation and mental anguish, was deprived of his liberty and was injured in his good name and reputation, all to his damage in the sum of Ten Thousand Dollars."

The quoted allegation in his complaint was traversed by the answer, together with the averment charging that the defendant acted maliciously and without probable cause in causing the arrest.

The answer admits the arrest and imprisonment and avers in substance that the defendant had a chattel mortgage on the mare, that the plaintiff sold her without the defendant's permission and that the latter made a full, complete statement to a deputy district attorney of all the facts and circumstances in connection with the sale of the mare which were within the knowledge of the defendant or which he had reasonable ground to believe there were, exhibited to the officer the paper executed by Marshall and issued to McKillop and was advised by the attorney to institute prosecution against the plaintiff. The new matter in the answer was materially challenged by the reply.

1. Some of the assignments of error relate to the refusal of the trial court to strike out answers of the plaintiff given while testifying as a witness. The record shows him to have been somewhat garrulous in his testimony but the motions to strike out on the ground of the answer not being responsive to the question, generally included all of the answer, some of which was indeed responsive. This of itself would sustain the ruling. The motion itself should have been more definite. Besides this, the matter of the answer was not essentially hurtful to the defendant.

2. Objection was made to the court's ruling in allowing the plaintiff to testify to the value of the mare. He said, ''Her earning capacity wasn't much; she didn't earn much, but her value, she had ought to have been worth four or five hundred dollars.'' We glean from the record that the defendant's claim on the mare amounted to $150. That of McKillopp was $115, plus a feed bill for thirty days, the amount of which is not revealed. The value of the mare was competent to go to the jury in evidence as throwing light on the intent of the plaintiff in the transaction. The jury would be authorized to infer that he was not intending to commit larceny by bailee when he only encumbered the mare for about a moiety of her value. If he intended to commit that kind of larceny, he would probably have mortgaged or pledged her for more than he did if she was worth as much as he stated.

3, 4. Error is likewise predicated on the refusal of the trial court to grant a nonsuit at the conclusion of plaintiff's case and in denying the defendant's motion for a directed verdict and a binding instruction to the jury in his favor. The fact that the plaintiff

was discharged by the committing magistrate is some evidence of the lack of probable cause. There is also some testimony to the effect that the defendant did not make a full statement of all the facts and circumstances relating to the transaction on which he based his prosecution when he consulted the public prosecutor. In this view of the testimony, it was for the jury to determine whether the prosecution was instituted in good faith or from malicious motives.

5. It remains to consider the error assigned upon the court's restrictions of the defendant's cross-examination. Mr. Dickerson was sworn as witness for the plaintiff. On direct examination the record discloses the following questions and answers:

"Q. * * Now, Mr. Dickerson, do you know what Marshall's general reputation is for honesty?

"A. Why, it is good, as far as I know. I would just as soon take his word as anybody.

"Q. You know his general reputation among the people that he—

"A. [Interrupting.] He has always been fair with me.

"Q. His reputation among the people that he deals with, the race-horse people?

"A. Why, all that I have heard talk, yes."

On cross-examination the following occurred:

"Q. But you are very friendly to Mr. Marshall. Did you say he had a good reputation? Is that what you said a while ago?

"A. As far as being truthful.

"Q. Is it limited down to honesty?

"A. Well, now, I couldn't say to that; never heard anyone say he wasn't honest.

"Q. Well, you know his general reputation in that community out there, don't you?

"A. Well, I talked to Mr. J. J. Cadderly; he said he was the best man he ever had, he treated him fair and square.

"Q. Now, isn't it a fact, as a matter of fact, his reputation isn't good in that community?

"A. Why, no, nobody ever told me he wasn't.

"Q. You know he has been running around there with an Indian woman, passing her off as his wife?"

At this juncture counsel for plaintiff interposed the objection that the question was incompetent, irrelevant and immaterial and not cross-examination. The court sustained the objection. The defendant, by his counsel excepted and thereupon made the following offer of proof:

"We expect to show by the witness herein, if he is allowed to answer the above question, that the said plaintiff was cohabiting with an Indian woman by the name of Segers, and that he had traveled with her over the entire racing circuit during the year 1920, and that he had passed her off as his wife, and that the reputation of the plaintiff was bad."

The court denied the offer and the defendant again excepted.

We remember that the complaint alleges that the plaintiff "was injured in his good name and reputation" without specifying any particular ingredient of that reputation. On this branch of the case plaintiff's counsel first called for the witness' testimony as to the plaintiff's general reputation for honesty. Not content with this limitation on his question, counsel went further, asking the witness:

"You know his general reputation among the people that he deals with, the race-horse people?

To this question the witness gave an answer commendatory of the plaintiff's reputation as quoted above. At the least, this additional question and answer opened his general reputation to critical examination and did not confine the cross-examiner merely to monetary honesty.

"The adverse party may cross-examine the witness as to any matter stated in his direct examination or connected therewith and in so doing may put leading questions." Or. L., § 860.

In *Ah Doon* v. *Smith,* 25 Or. 89, 93 (34 Pac. 1093, 1094), we find Mr. Justice Bean using this language:

"Under this statute and the rule there provided a party has no right to cross-examine a witness except as to facts and circumstances stated in his direct examination or connected therewith; but within this limitation great latitude should be allowed in conducting the examination. It should not be limited to the exact facts stated on the direct examination but may extend to other matters which tend to limit, explain or qualify them or to rebut or modify any inference resulting therefrom, provided they are directly connected with the matter stated in the direct examination. * * A party will not be permitted to glean out certain facts from his witness which without explanation would give a false coloring to the matter about which he testifies and then save his witness from the sifting process of a cross-examination by which the real transaction could be shown."

In that case, the action was for the recovery of $740 alleged to have been loaned by the plaintiff to the defendant and also for $145 said to have been received by the defendant for the use of the plaintiff. On direct examination, the plaintiff stated enough literally to sustain this allegation but over his objection the defendant was permitted to show on cross-examination that the real transaction was what occurred in a gambling game in which the plaintiff loaned the defendant money as stated in the first count for the purpose of gaming and that the smaller sum was the plaintiff's share of the stake which the defendant took from the table as winnings at the end of the game. In *Sayres* v. *Allen,* 25 Or. 211, 214

(35 Pac. 254, 255), Mr. Chief Justice LORD, writing on this subject, said:

"Such an examination affords one of the principal and most efficacious tests for the discovery of truth, and renders it extremely difficult for a witness subjected to such test to impose upon the court or jury. Such being its importance, great latitude should be allowed the adverse party in conducting his cross-examination, in order to make it effective and subserve the ends of justice."

Further on in the same opinion the learned Chief Justice used this language:

"As a general rule, it is true that the range and extent of the cross-examination is within the discretion of the trial court, subject, however, to the limitation that it must relate to facts and circumstances connected with the matter stated in the direct examination. In such case, it is only when these limitations are disregarded that there has been an abuse of discretion which authorizes the appellate court to interfere. But the rule under consideration gives the right of inquiry on cross-examination into all the facts and circumstances connected with the matters of the direct examination. As the defendant had the right, on cross-examination, to require that Sayres should give a detail of the circumstances surrounding the facts to which he had testified, prejudice will be presumed where this right is denied."

*State* v. *Ogden,* 39 Or. 195 (65 Pac. 449), was a prosecution for the crime of rape. There had been testimony by a witness for the state that the reputation of the prosecutrix for chastity and virtue was good in the community in which she resided. The defendant was denied the right to propound to that witness on examination questions indicating that the prosecutrix had been discharged from several positions on account of her immoral conduct. In revers-

ing the conviction of the defendant and while considering this feature of the record, Mr. Justice MOORE said:

"A court should be much more careful of the rights of a party to an action than of the mere privileges of a witness, for he may be deprived of his life, restrained of his liberty, or divested of his property by the judgment therein, while a witness called by either party is not affected by the adjudication. And, as as have seen, a witness called for the defendant in a criminal action to establish his reputation as to any specific trait of character is required to testify on cross-examination in relation to similar specific offenses committed by the accused, *a fortiori* the witness who is called to testify concerning the general reputation of another witness ought to be required on cross-examination to detail with much greater particularity all the facts and circumstances that may in any manner tend to limit or qualify his opinion, illustrate his motive, or test his veracity."

The learned judge concluded his treatment of the subject thus:

"The questions so propounded to him related to and were connected with the matter stated by him in his direct examination, and, the court not having permitted him to answer any of them, such action was not the exercise of judicial discretion as to the extent of his cross-examination, but the denial of an absolute right guaranteed to the defendant, which necessitates a reversal of the judgment."

See, also, *Maxwell* v. *Bolles,* 28 Or. 1 (41 Pac. 611); *Oregon Pottery Co.* v. *Kern,* 30 Or. 328 (47 Pac. 917).

Mr. Justice MOORE also discussed the subject of cross-examination in *Blue* v. *Portland Ry., L. & P. Co.,* 60 Or. 122 (117 Pac. 1094). The action was against the railway company for personal injuries suffered by the plaintiff being thrown from a car by

sudden lurches thereof caused by the negligent action of the acting motorman. A witness for the defendant who was serving in that capacity when the plaintiff was hurt, gave an account of how the accident occurred without saying anything about his experience in that position. On cross-examination, he was required over the exception of the defendant, to tell how long he had worked as a motorman and what skill he possessed. An excerpt from the opinion is here set down:

"In construing this clause of the statute, it has been held that if from the direct examination of a witness the jury could draw an inference, such deduction of fact thereby becomes connected with the testimony in chief rendering it a legitimate matter of cross-examination."

In *Speer* v. *Smith*, 83 Or. 571 (163 Pac. 979), the plaintiff as a witness in his own behalf testified that he was the owner of the note sued on and that it had been transferred to him. On cross-examination the defendant sought to inquire about the circumstances of the assignment so as to ascertain whether the plaintiff had knowledge of the fraud alleged as a defense to the action. The plaintiff objected saying "that this is their case to make out a proof of fraud." This objection was sustained at the trial but this court, speaking by Mr. Justice HARRIS, said:

"The direct examination opened the doors to the inquiry sought to be made by the defendants and while it is not necessary to relate the whole record it is enough to say that under all the surrounding circumstances the limitation placed upon the right of cross-examination was specially prejudicial to the defendants. * * He [the plaintiff] testified in general but nevertheless comprehensive language that the note had been transferred to him and that he owned

it; and the defendants were entitled to ascertain the circumstances of the transfer by cross-examination. Plainly, the cross-examination attempted by the defendants would have been as to matter stated in direct examination.''

Even if all the interrogatories in the instant case related merely to the plaintiff's reputation for financial honesty, yet presuming him to be innocent of any crime or wrong, and having heard testimony that he had a good reputation for such honesty, the jury might infer that his reputation in other respects, or, in other words, his general reputation, was good. Under the rule laid down in *Blue* v. *Portland Ry., L. & P. Co.* and *Spear* v. *Smith, supra,* this would open the door to the cross-examination excluded in the instant case in either view of the matter. Claiming in his complaint that his whole reputation and good name and not some feature thereof was damaged, the plaintiff had no right to exhibit any single trait of that reputation and base his recovery entirely upon that without allowing the testimony of his witness to be submitted to the test of cross-examination. The defendant had a right to inquire why this particular element of his reputation was put forward in support of the whole and to ascertain the nature and quality of the remainder of his reputation. The matter sought to be elicited as a characteristic of his reputation certainly was connected with the statement of his reputation in direct examination as a part is connected with every other part of a homogeneous whole, within the meaning of the statute. Even in these days of commercialism, general reputation is not measured exclusively by the sordid standard of the dollar. It is common doctrine that there is some good in every human being which may be developed

if we only know how to reach it. The veriest scoundrel may have a reputation of paying his honest debts and yet we would be justified under some circumstances in saying that his general reputation is bad. A general reputation is what is here involved. The matter sought to be elucidated was valuable to the defendant at least in mitigation of damages, for in good reason the reputation of a shameless libertine, although he pays his debts, is not as valuable as that of a strictly chaste and moral man who also promptly meets his monetary obligations.

The conclusion is that for this error the judgment is reversed and the cause remanded for further proceedings.

Mr. Justice McCourt, having presided at the trial of this case while he was a circuit judge, took no part in the consideration thereof in this court.

                              REVERSED AND REMANDED.

HARRIS and BEAN, JJ., concur in the results.