Argued April 16; affirmed May 12; rehearing denied June 16, 1931

# LUCAS *v.* KAYLOR

(299 P. 297)

*Louis E. Schmitt,* of Portland, for appellant.

*H. E. Collier,* of Portland (Collier, Collier & Bernard, of Portland, on the brief), for respondent.

BEAN, C. J. This is an action for damages for malicious prosecution. A verdict was rendered in favor of plaintiff. From a consequent judgment defendant appeals.

The circumstances pertaining to the matter, so far as it is deemed necessary to relate, are about as follows: On the 12th of December, 1928, the defendant Kaylor exchanged five hundred shares of Myers Valve stock with plaintiff Lucas and Mrs. M. Bruce for certain household furniture located in an apartment house and in a small building in the backyard of the apartment house in Portland, Oregon, a list of which furniture was attached to the bill of sale executed to Kaylor; thereafter, under a contract with Kaylor, Lucas and Mrs. Bruce occupied the premises until the 13th of April, 1929. The furniture had been transferred to Lucas and Mrs. Bruce by a third party and an inventory made thereof, which was taken as a description at the time of the deal with defendant. Kaylor did not check the list.

The testimony tended to show that, during the time Lucas and Mrs. Bruce occupied the premises, they had furniture and goods of their own in the building and also some that had been left by tenants as security for rent, and some stored by other parties. Some time prior to the 12th of April, 1929, defendant had a prospective purchaser for his furniture, one Mrs. Disbrow, who called at the apartment house to examine the goods. The plaintiff states that he endeavored to get the defendant to inventory his goods in the apartment house in order to enable plaintiff to be ready to move therefrom, but was unable to do so. About April 11, the defendant Kaylor and Mrs. Disbrow, as he asserts, went to the rooming house for the purpose of check-

ing its contents, when a dispute arose as to the list or inventory of the furniture belonging to the defendant, which he had at that time. The defendant then arranged for an attorney to go with Mrs. Disbrow the following morning to the rooming house, giving the attorney the inventory for the purpose of checking the contents. Upon their arrival they found a large moving van then being loaded with furniture and household effects taken from the premises, and they protested to the plaintiff that he was apparently removing the property belonging to defendant. After some argument the attorney for Mrs. Disbrow advised defendant of the fact that the furniture and household effects on the premises were being moved away by the plaintiff. Thereupon the defendant obtained from the district attorney a complaint, which he signed, charging the plaintiff with grand larceny, and a warrant was secured from Municipal Judge Stadter. Plaintiff was arrested and confined in jail until the following day, when he furnished bail. On April 15, 1929, the case against plaintiff came on for hearing before Municipal Judge Stadter, as ex officio justice of the peace. The court, after hearing some of the testimony, advised Mr. Kaylor, the prosecuting witness, that the magistrate desired more specific information as to just what articles of furniture had been taken and removed by plaintiff. Kaylor informed the magistrate that he was certain about half of the goods was gone, and the magistrate advised him that he would hold the case open indefinitely until he made a check of the goods or he could go before the grand jury. The magistrate made an entry in the record at the time "Cont. Indef." Thereafter he ran a line through the words "Con. Indef." and wrote the word "Discharged." On the same date a formal order was made and signed by

the judge to the effect that the defendant Lucas had been duly examined and it appeared from the testimony that the crime of grand larceny "has not been committed and that there is not sufficient cause to believe defendant guilty thereof. Defendant discharged."

Upon the trial of the present case, after the introduction of all the testimony, the defendant Kaylor moved the court for a directed verdict in his favor, which was denied. It appears that the defendant Kaylor completed checking the goods, which he claimed, on April 18. The testimony strongly tends to show that the furniture which plaintiff moved from the apartment house belonged to him or that it had been stored there by others, and that he took none of the goods which he had sold to defendant Kaylor or which belonged to Kaylor. It seems that the furniture plaintiff took from the apartment house was moved to Vancouver, only a short distance, but it does not appear that defendant had the goods examined, and it is doubtful if the defendant would know any of his furniture, except by the inventory which he had obtained.

■ The defendant assigns error of the court in refusing to direct a verdict in his favor. There was some contradictory evidence, as usual, but the testimony strongly tended to support the allegations of plaintiff's complaint and to show that there was no probable cause for plaintiff's arrest and prosecution.

As one of the grounds for a directed verdict in favor of defendant, he states

"That the defendant made a full and fair statement of all the facts to his attorney and to the district attorney of Multnomah county before signing the complaint for a warrant."

It is difficult to understand how the defendant could have made a full and fair statement to the dis-

trict attorney before signing the complaint. He evidently knew little or nothing about the matter himself. He had sent Mrs. Disbrow and Mr. Warrington, his attorney, to the rooming-house and they had reported to him that Lucas was moving the furniture away from the premises. They were not familiar with the furniture and did not know whose it was. Defendant did not investigate to ascertain whose goods plaintiff was moving. As to stating the facts to the officer, it was a controverted question which was for the determination of the jury: *Marshall v. Brown,* 108 Or. 658, 662 (218 P. 923). Mr. Hoesly, deputy district attorney, testified as follows:

"so I gave him the warrant and told him it was a very serious proposition, having someone arrested, was very serious, and that 'I am giving you this warrant' because he was insisting upon it and wanted it, but he is not getting the warrant upon my advice; he is taking it against my better judgment and against my wishes, and if there was anything happened in the future about this, why, he would have to look to himself, but I had tried to advise him not to get a warrant of arrest."

Mr. Warrington, defendant's attorney at that time, testified that he did not instruct defendant to get a warrant for plaintiff's arrest. Much of the argument upon the ruling on the motion for a directed verdict is devoted to disputed questions of fact, which of necessity were submitted to the jury. There was no error of the court in refusing to grant the motion for nonsuit.

■ Error is predicated upon the testimony of Mrs. Bruce, on behalf of the plaintiff, when she read a list of household goods, from a cash-book entry which she had made therein, that were in the apartment house belonging to people other than the defendant Kaylor. This was about the only way that the witness could

testify in regard to the several articles of household goods. It appears from the record that the witness was asked to "turn to that book and tell the jury what property, if any, you had there belonging to Stanley Smith." The same testimony was elicited in regard to other persons, and she mentioned household goods and cooking utensils. It seems she was allowed to use the book to refresh her memory. Counsel for plaintiff also offered to introduce the book in evidence.

■■ Defendant assigns error of the court by reason of Randles, a witness for plaintiff, being recalled by the defendant and asked whether he had ever been convicted of a crime, to which he answered "Yes, once." The witness, at his own request, was permitted to explain that he was interested in a corporation at one time and two other men obtained the controlling interest therein and put him out, and he said:

"I told him that if these two men, the young man and the old man, took ten or twelve thousand dollars of the money I had worked ten years for, I would feel like killing them, and they had me arrested for threats."

He stated further that he was convicted before Judge Bagley, but not punished. The record is not very clear as to the crime of which the witness said he was convicted. See *Hendricks v. Portland Electric Power Co.*, 134 Or. 366 (289 P. 369, 371), and cases there cited. Under the circumstances of this case, we do not believe that the defendant was prejudiced by the witness' statement.

It is sometimes admissible for an assailed witness, whose conviction of a crime is shown in order to impeach him, to explain the circumstances of the conviction. This rule prevails in some jurisdictions: 7

Enc. of Evi. 222; see also *Philpot v. Commonwealth of Kentucky,* 195 Ky. 555 (242 S. W. 839, 25 A. L. R. 1367) ; *State v. Ragan,* 123 Or. 521, 529 (262 P. 954).

■ Error is predicated upon the admission of testimony of witnesses to the effect that defendant Kaylor's general reputation for truth, in the community in which he lived, was bad. This testimony was competent for the purpose of impeachmant of defendant who was a witness in his own behalf, under section 9-1911, Oregon Code 1930. Defendant cites in support of his contention 18 R. C. L., p. 56, § 36. That relates to the testimony in regard to the character of plaintiff and not of defendant, and is not in point.

■ Defendant, in his brief, complains of the following instruction given by the court:

"I instruct you that where a person is charged, as this plaintiff was charged, of a felony by a person, and the Justice of the Peace, after considering all the evidence, makes an order that there is no probable cause to believe that such defendant was guilty of the crime charged in said criminal complaint, or of any crime whatever, and orders that the defendant in such criminal action be discharged, the action of the Justice of the Peace constitutes a termination of said criminal prosecution for the purpose of an action for malicious prosecution, and such termination is also prima facie evidence of want of probable cause for commencing a prosecution of a crime": See 18 R. C. L. 27, § 15.

Defendant contends that the instruction was erroneous in charging the jury that the discharge of defendant was prima facie evidence of want of probable cause. This question is answered in the case of *Marshall v. Brown,* supra, by the language of Mr. Justice BURNETT, at page 661 et seq., as follows: "The

fact that the plaintiff was discharged by the committing magistrate is some evidence of the lack of probable cause.''

Other instructions are criticized, but we have carefully examined the charge given by the court to the jury and believe that it covered the issues in the case and plainly and fairly presented the questions to the jury to be determined. We find no error in the instructions of the court.

Finding no error in the record, the judgment of the circuit court is affirmed.

RAND, ROSSMAN and KELLY, JJ., concur.