Argued April 4; affirmed April 25, 1933

# HAYES *v.* OGLE ET AL.

(21 P. (2d) 223)

[1]

*Reuben G. Lenske,* of Portland (Wm. B. Layton, Edward A. Boyrie, and Lester L. Ahlgrim, all of Portland, on the brief) for appellant.

*George Black, Jr.,* of Portland (Platt, Platt, Fales, Smith & Black, of Portland, on the brief) for respondent A. B. Smith Motor Co.

BAILEY, J. This action was instituted against defendants J. H. Ogle, A. B. Smith Motor Co., H. C. Mueller and Mrs. H. C. Mueller for injuries suffered by plaintiff in a collision between an automobile in which she was riding and one driven by Mrs. Mueller.

At the close of plaintiff's testimony, defendant A. B. Smith Motor Co. moved for and was granted a directed verdict against the plaintiff. Thereafter the case proceeded against the defendants H. C. Mueller

and Mrs. H. C. Mueller and verdict was rendered in favor of the plaintiff, upon which judgment was entered.

In order to connect the defendant A. B. Smith Motor Co. with the Ford sedan automobile driven by Mrs. H. C. Mueller, plaintiff called as a witness the defendant Ogle, who testified as follows:

"Q. Did you continue to own the car after you ceased working for them [A. B. Smith Motor Co.] ?

"A. No, sir.

"Q. What did you do pertaining to your interest in the car?

"A. I turned the machine back to the company.

"Q. When was that?

"A. That was just at the time I left there, September, 1930".

On cross-examination by the attorney for A. B. Smith Motor Co. this witness stated that he had worked for said defendant as a salesman; that the company held the Ford agency and was engaged in selling Ford automobiles; and that he had turned the car back to the defendant company between September 1 and 5, 1930. He was then asked: "Now, it is a fact, is it not, that the A. B. Smith Motor Co. resold that car to Mr. Mueller before the time of this accident on October 5, 1930?" To this question counsel for plaintiff objected, on the ground that it was not proper cross-examination as it was not confined to the direct examination. He admitted, however, that the testimony on direct examination had been introduced to prove the ownership of the car, presumably on the day of the accident. In answer to the above question, Ogle stated: "I met Mr. Mueller about three weeks after I left there, I met him right across the street from the A. B. Smith Motor Co. and he told me at that time that he bought the machine from

the A. B. Smith Motor Co.''. Further testimony regarding this matter was given by the same witness as follows:

"Q. Mr. Ogle, after you turned that car back, as you testified, to the A. B. Smith Motor Co. some time between the first and the fifth of September, when was the next time you saw the car?

"A. Oh, it was about three weeks after.

"Q. And where did you see it?

"A. I met Mr. Mueller right across from the A. B. Smith Motor Co.

"Q. You saw the car then?

"A. Yes, he was just getting into the machine at that time.

"Q. In whose possession was the automobile at that time?

"A. Mr. Mueller's".

The attorney for plaintiff thereupon moved that "all those questions and answers should be stricken as incompetent, irrelevant and immaterial, and improper cross-examination," which motion was denied and an exception allowed.

■ Counsel for plaintiff assigns as error the court's refusal to sustain his objection to the foregoing question relating to the sale of the car to Mueller on the ground that the same was not proper cross-examination.

The avowed purpose of plaintiff in introducing testimony to the effect that Mr. Ogle had turned the automobile back to the defendant A. B. Smith Motor Co. prior to the accident was to avail herself of the benefit of the presumption described by section 9-807, subdivision 33, Oregon Code 1930, as follows:

"That a thing once proved to exist continues as long as is usual with things of that nature".

In the case of *Goltra v. Penland,* 45 Or. 254 (77 P. 129), cited by plaintiff in support of her contention, this court in discussing the limits of cross-examination said:

" 'Under this statute,' says this court in Ah Doon v. Smith, 25 Or. 89, 93 (34 Pac. 1093, 1094), 'and the rule there provided, a party has no right to cross-examine a witness except as to facts and circumstances stated on his direct examination, or connected therewith; but, within this limitation, great latitude should be allowed in conducting the examination. It should not be limited to the exact facts stated on the direct examination, but may extend to other matters which tend to limit, explain, or qualify them, or to rebut or modify any inference resulting therefrom, provided they are directly connected with the matter stated in the direct examination".

In the case of *Blue v. Portland Railway, Light & Power Co.,* 60 Or. 122 (117 P. 1094), this court in construing section 9-1908, relating to the extent of cross-examination, remarked:

"In construing this clause of the statute, it has been held that, if from the direct examination of a witness the jury could draw an inference, such deduction of fact thereby becomes connected with the testimony in chief, rendering it a legitimate matter of cross-examination".

Compare also *Sayres v. Allen,* 25 Or. 211 (35 P. 254); *Marshall v. Brown,* 108 Or. 658 (218 P. 923); 40 Cyc., page 2493, § XI. The cross-examination above referred to tended to rebut the inference or presumption attempted to be created by the direct testimony, by evidence tending to prove that Mueller, rather than the defendant corporation, was the owner of the car subsequent to the time that Ogle turned it back to the defendant corporation. No error was committed by overruling plaintiff's objection to this testimony.

As a part of her proof of the ownership of the Ford sedan driven by Mrs. Mueller at the time of the accident, plaintiff introduced a certified copy of the certificate of title issued by the secretary of state of Oregon relative to this motor vehicle, with the endorsements on the back thereof. This certificate was dated March 7, 1930, and was to the effect that defendant J. H. Ogle was at that time the owner of the car, subject to a lien of $550 in favor of the defendant corporation, represented by a sales contract. On the back of the certificate is the following notation:

"October 11, 1930.

"For value received I hereby sell, assign, transfer and convey unto A. B. Smith Motor Company, 254 Sixth Street, Portland, Multnomah county, Oregon, the motor vehicle described on the reverse side of this certificate and I hereby warrant the title to said motor vehicle and certify that at the time of delivery the same is subject to the following liens or encumbrances and none other: Amount of lien: None.

"J. H. Ogle".

In substantially the same language there appears also a re-assignment by said corporation under the same date to Benjamin C. Fenner. The certificate of title with these assignments thereon was received and filed by the secretary of state on October 14, 1930. The assignments on the back of the certificate above mentioned and the testimony of defendant Ogle constituted the only evidence as to the A. B. Smith Motor Co.'s ownership of or connection with the automobile driven by Mrs. Mueller at the time of the accident. There was no direct evidence connecting Mrs. Mueller with the defendant corporation.

At the close of plaintiff's testimony the defendant corporation moved for a directed verdict, which was

granted by the court, and the allowance of this motion is assigned by plaintiff as error. On appeal the plaintiff contends that based on the testimony of the defendant Ogle that he had turned the automobile back to the defendant corporation there was a presumption, predicated upon the statute above referred to, section 9-807, subdivision 33, that said corporation continued to be and was the owner of the Ford automobile at the time of the accident.

■■ Section 55-203, Oregon Code 1930, provides that in the event of the sale or transfer in this state of the ownership of a motor vehicle for which the certificate of title has been issued the owner of the vehicle shall endorse on the back of the certificate of title an assignment thereof with warranty of title. The certificate of title, with the assignments on the back thereof, was apparently introduced by the plaintiff to show that the motor vehicle had not been transferred by the defendant corporation until October 11, 1930, almost a week subsequent to the accident.

Section 55-201, Oregon Code 1930, with reference to the certificate of title to motor vehicles issued by the secretary of state, provides that:

"The certificate issued by the secretary of state, as in this act provided, shall be *prima facie* evidence of the ownership of such motor vehicle".

This section of the statute, however, does not make the endorsements or assignments on the back of the certificate *prima facie* evidence of the facts therein stated. Nevertheless, since the statute requires the owner of the motor vehicle to endorse on the back of the certificate of title an assignment thereof when the vehicle is sold, and provides for the filing of the cer-

tificate and assignment with the secretary of state, a certified copy of such record would be admissible under section 9-628, Oregon Code 1930.

■ No attempt was made by the plaintiff to prove that the date in the assignment from Ogle to the defendant corporation was erroneous. We therefore have a record showing that Ogle, according to his own testimony, had, during the first week in September, 1930, "turned the machine back to the company", and the assignment on the certificate of title showing that the car was not sold or transferred to the defendant corporation until October 11 of the same year. Assuming that the statement of the defendant Ogle that he had "turned the machine back to the company" was tantamount to saying that on that date he had sold the car to the defendant corporation, plaintiff contends that under the provision of section 9-807, subdivision 33, Oregon Code 1930, "that a thing once proved to exist continues to exist as long as is usual with things of that nature," there exists a presumption that the defendant corporation was the owner of the automobile at the time of the accident. We know of no presumption that because a dealer in used automobiles owns a certain automobile one day, his ownership thereof will continue for 30 days or any other definite time. His ownership of the car would be merely for the purpose of disposing of it at the earliest possible date. Moreover, there is no direct testimony that Ogle sold the car to the defendant corporation prior to October 11, 1930. The automobile may have been turned back to the company for the purpose of sale under the terms of the conditional sales contract, without vesting ownership thereof in the defendant corporation.

There are, however, under section 9-807, Oregon Code 1930, several presumptions which might apply to

this case. For instance, subdivision 11 of the section provides "that things in the possession of a person are owned by him," and the evidence in the case is undisputed that the automobile at the time of the accident was in the possession of Mrs. Mueller. Subdivision 12 of this section provides "that a person is the owner of property who exercises acts of ownership over it, or from common reputation of ownership," and we find from the testimony that Mr. Mueller was, on September 26, in possession of the car and claiming ownership of it. We also have, under subdivision 23 of the same section, the presumption "that a writing is truly dated," and therefore the presumption that the date of the assignment is correct. Under subdivision 34 of the same section the presumption is "that the law has been obeyed"; hence it could be presumed that the defendant corporation complied with section 55-203, requiring a licensed dealer to notify the secretary of state immediately when an automobile has been transferred to him. And since the plaintiff did not attempt to show whether or not that had been done, then, under subdivisions 5 and 6 of section 9-807, there might be a presumption that had such evidence been produced it would have been adverse to the plaintiff.

 When the plaintiff introduced in evidence a certified copy of the certificate of title to the automobile which Mrs. Mueller was driving at the time of the accident she thereby furnished *prima facie* evidence that the car was owned by Ogle on October 5. By the introduction in evidence of the assignment on the back of the certificate there arose a presumption that the assignment was made on the date it bore, October 11, 1930. As already stated, no evidence was offered in explanation of the assignment or the date thereof. It

might well be that Ogle had, under his conditional sales contract, turned the automobile back to the defendant corporation early in September, but that the ownership thereof did not actually vest in that compnay until October 11, the date of the assignment. Moreover, the automobile might, in the intervening weeks, have been sold by the defendant corporation and re-transferred to it before the date of the accident.

In order to hold the defendant corporation liable it was necessary that the jury infer from the evidence that Mrs. Mueller at the time she was driving the Ford automobile was the agent of the defendant corporation and in the performance of her duty as such agent. Such an inference, however, would have to be based on the assumption that Ogle's statement about turning the car back to the company could not be construed otherwise than as meaning that he had transferred title to the defendant corporation and on the presumption that the latter continued in possession of the car from the early part of September until the date of the accident. "An inference is a deduction which the reason of the jury makes from the facts proved, without an express direction of law to that effect": section 9-802, Oregon Code 1930; while "a presumption is a deduction which the law expressely directs to be made from particular facts": section 9-803; and it is necessary that an inference be founded on a fact legally proved. In 10 R. C. L., page 870, it is said:

"It is a well-established rule that a presumption can be legally indulged only when the facts from which the presumption arises are proved by direct evidence, and that one presumption can not be deduced from another. To hold that a fact inferred or presumed at once becomes an established fact, for the purpose of

serving as a base for a further inference or presumption, would be to spin out the chain of presumptions into the regions of the barest conjecture''.

We have already mentioned a number of disputable presumptions arising from the evidence in the case. This court, referring to various disputable presumptions enumerated in the statute (now section 9-807, Oregon Code 1930), in *State ex rel. v. Olcott*, 67 Or. 214 (135 P. 95, 902), said:

''These presumptions are of equal weight under the statute and in this instance would balance each other, so that, if the plaintiff upon whom the burden of proof rests would prevail, some other testimony must be produced to show that in fact the same person in the instances mentioned signed the petition more than once''.

In addition to the foregoing we have the testimony of Ogle that Mr. Mueller on September 26 was in possession of this motor vehicle and saying to Ogle that he owned it. This statement by Ogle was in response to a question as to whether or not the defendant corporation had ''resold the car to Mr. Mueller'' before the accident. The question was objected to on the ground that it was not proper cross-examination, which objection has already been considered. There was, however, no motion to strike this particular answer as being hearsay, although there was a motion by counsel for plaintiff that ''all those questions and answers be stricken as incompetent, irrelevant and immaterial, and improper cross-examination''. At least some of those questions, as already pointed out, were proper, and therefore counsel's motion was properly denied. Consequently there is this testimony in the record as to the ownership of the automobile at a date subsequent to the time when it was turned back to the company by Ogle and prior to the accident.

Miss Viola Smolniski was subpoenaed by the plaintiff to produce certain books of the defendant corporation, and on cross-examination testified as follows:

"Q. What records do you have with regard to that ownership [referring to the car driven by Mrs. Mueller]? Enumerate them.

"A. I have a sales order, a card record, and a card ledger sheet, and the original and duplicate contract of the sale to Mr. Mueller on the twenty-fifth of September, 1930".

It can not be said, in view of the other presumptions noted, which are at least of equal weight with the presumption that the defendant corporation continued until the date of the accident to own the automobile driven by Mrs. Mueller, and the testimony of Ogle and Miss Smolniski, that ownership by the defendant corporation on October 5, 1930, was "a fact legally proved," from which the inference might be drawn that Mrs. Mueller was on that date operating the automobile as the defendant corporation's agent.

The plaintiff attached to and made a part of her bill of exceptions all the evidence in the case, including that introduced after the court had granted the defendant corporation's motion for a directed verdict. We are asked by plaintiff on this appeal, based on the fact that all the testimony is before us, to reverse the lower court and enter judgment against the defendant corporation for the same amount·as that recovered against the defendants Mueller. After the defendant company's motion for a directed verdict had been granted, Mrs. Mueller was called as a witness and testified that on the date of the accident the automobile was owned by defendant H. C. Mueller. This testimony is uncontradicted and is the only direct evidence in the

record as to the ownership of the automobile on the date of the accident. Were we to consider all the evidence in the case for the purpose of entering a judgment in accordance therewith, we should have, in view of Mrs. Mueller's testimony and regardless of the other obstacles in plaintiff's case, no alternative in finding for the defendant corporation.

No error was committed by the trial court in granting the motion of A. B. Smith Motor Co. for a directed verdict and the judgment appealed from is affirmed.

RAND, C. J., BEAN and CAMPBELL, JJ., concur.